# TRADING BAY FIELD

# JOINT OPERATING AGREEMENT

# BY AND BETWEEN

# UNION OIL COMPANY OF CALIFORNIA

# AND

# MARATHON OIL COMPANY

# MAY 1996

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

# TABLE OF CONTENTS

| SECTION | ARTICLE | PAGE |
|---|---|---|
| **ARTICLE I - EXHIBITS - APPENDICES** | | 1 |
| 1.1 | EXHIBITS | 1 |
| | | |
| **ARTICLE II - DEFINITIONS** | | 1 |
| 2.1 | AREA OR TRACT | 1 |
| 2.2 | COSTS | 1 |
| 2.3 | DEVELOPMENT WELL | 1 |
| 2.4 | DRILL, DRILLED OR DRILLING, DEEPEN OR PLUG BACK | 1 |
| 2.5 | EXPLORATORY WELL | 1 |
| 2.6 | INJECTION WELL | 2 |
| 2.7 | LEASE BURDENS | 2 |
| 2.8 | MARKET VALUE | 2 |
| 2.9 | NON-DRILLING PARTY | 2 |
| 2.10 | PARTY | 2 |
| 2.11 | POOL | 2 |
| 2.12 | PRODUCTION | 2 |
| 2.13 | OPERATOR | 2 |
| 2.14 | WORKING INTEREST | 2 |
| | | |
| **ARTICLE III - SUPERVISION OF OPERATIONS BY PARTIES** | | 3 |
| 3.1 | OVER-ALL SUPERVISION | 3 |
| 3.2 | PARTICULAR POWERS AND DUTIES | 3 |
| | | |
| **ARTICLE IV - MANNER OF EXERCISING SUPERVISION** | | 4 |
| 4.1 | VOTING PROCEDURE | 4 |
| 4.2 | POLL VOTES | 4 |
| 4.3 | VOTE BINDING ON PARTIES | 4 |
| 4.4 | VOTE REQUIRED | 5 |
| | | |
| **ARTICLE V - INDIVIDUAL RIGHTS OF PARTIES** | | 5 |
| 5.1 | RESERVATION OF RIGHTS | 5 |
| 5.2 | SPECIFIC RIGHTS | 5 |
| | | |
| **ARTICLE VI - OPERATOR** | | 6 |
| 6.1 | INITIAL OPERATOR | 6 |
| 6.2 | RESIGNATION OR REMOVAL OF OPERATOR AND SELECTION OF SUCCESSOR | 6 |

Exhibit B
Page 2 of 46



OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

TABLE OF CONTENTS (Continued)

SECTION    ARTICLE                                                PAGE

ARTICLE VII - AUTHORITIES AND DUTIES OF OPERATOR ............  7
   7.1    OPERATOR ........................................  7
   7.2    OPERATIONS ......................................  8

ARTICLE VIII - DRILLING, DEEPENING, PLUGGING BACK OR
ABANDONMENT OF EXPLORATORY, DEVELOPMENT AND
INJECTION WELLS ............................................ 10
   8.1    GENERAL PROVISIONS FOR EXPLORATORY,
       DEVELOPMENT AND INJECTION WELLS ............... 10
   8.2    EXPLORATORY WELLS ............................ 12
   8.3    DEVELOPMENT WELLS ........................... 12
   8.4    RELINQUISHMENT AND REVERSION OF INTERESTS ....... 12
   8.5    ABANDONMENT OF PRODUCING WELLS .............. 14
   8.6    INJECTION WELLS .............................. 14

ARTICLE IX - CONSTRUCTION OF CERTAIN FACILITIES ............ 15
   9.1    GENERAL ....................................... 15
   9.2    OPERATOR TO CONDUCT OPERATIONS ............. 15
   9.3    NOTICE OF PROPOSED CONSTRUCTION ............. 15
   9.4    RESPONSE TO NOTICE .......................... 15
   9.5    PARTICIPATION ................................ 16
   9.6    RELINQUISHMENT AND REVERSION OF INTERESTS ....... 16

ARTICLE X - RIGHT TO TAKE IN KIND AND FAILURE TO TAKE IN KIND --
UNDERLIFTING .............................................. 17
   10.1   TAKING IN KIND .............................. 17
   10.2   UNDERLIFTING OF PRODUCTION .................. 18
   10.3   ALLOCATION OF COSTS ......................... 18
   10.4   INDEMNITY ................................... 18

ARTICLE XI - EXPENSE ...................................... 18
   11.1   BASIS OF CHARGE TO PARTIES ................... 18
   11.2   ADVANCE BILLINGS ............................ 19
   11.3   COMMINGLING OF FUNDS ....................... 19
   11.4   LIEN OF OPERATOR ........................... 19

ARTICLE XII - TITLES ...................................... 19
   12.1   WARRANTY AND INDEMNITY ...................... 19

Exhibit B
Page 3 of 46

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

<u>TABLE OF CONTENTS (Continued)</u>

<u>SECTION</u>    <u>ARTICLE</u>                                                    <u>PAGE</u>

<u>ARTICLE XIII - RENTALS AND LEASE BURDENS</u> ..................... 20
    13.1    RENTALS ........................................ 20
    13.2    LEASE BURDENS ................................. 20
    13.3    PAYMENTS TO BE BORNE BY PARTIES ............... 20

<u>ARTICLE XIV - TAXES</u> ...................................... 21
    14.1 TAXES UPON PROPERTY AND OPERATIONS ............ 21
    14.2    OTHER TAXES ................................... 21
    14.3    TRANSFER OF INTERESTS ......................... 21
    14.4    NOTICES AND RETURNS ........................... 21

<u>ARTICLE XV - INSURANCE</u> .................................. 22
    15.1    REQUIRED INSURANCE ............................ 22
    15.2    INDIVIDUAL INSURANCE .......................... 23
    15.3    CONTRACTORS' INSURANCE ........................ 23
    15.4    NOTICE OF LOSSES AND CLAIMS ................... 23

<u>ARTICLE XVI - RELEASE FROM OBLIGATIONS; SURRENDER; RIGHT OF</u>
    <u>FIRST REFUSAL</u> ...................................... 23
    16.1    SURRENDER OR RELEASE .......................... 23
    16.2    ACCRUED OBLIGATIONS ........................... 24
    16.3    RIGHT OF FIRST REFUSAL ........................ 24

<u>ARTICLE XVII - FORCE MAJEURE</u> ............................ 25
    17.1    FORCE MAJEURE ................................. 25

<u>ARTICLE XVIII - NOTICES</u> ................................. 25
    18.1    GIVING AND RECEIPT ............................ 25
    18.2    PROPER ADDRESSES .............................. 26

<u>ARTICLE XIX - LIABILITY, CLAIMS, AND SUITS</u> ............. 26
    19.1    INDIVIDUAL LIABILITY .......................... 26
    19.2    SETTLEMENTS ................................... 26

<u>ARTICLE XX - INTERNAL REVENUE PROVISION</u> ............... 27
    20.1    INTERNAL REVENUE PROVISION .................... 27

**Exhibit B**
**Page 4 of 46**

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

## TABLE OF CONTENTS (Continued)

SECTION    ARTICLE                                                    PAGE

**ARTICLE XXI - EFFECTIVE TERM** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    21.1   TERM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27


**ARTICLE XXII - NON-DISCRIMINATION** . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    22.1   NON-DISCRIMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**ARTICLE XXIII - OTHER PROVISIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    23.1   AUDITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    23.2   LAWS AND REGULATIONS . . . . . . . . . . . . . . . . . . . . . . . . . 28
    23.3   ADDITIONAL BURDENS . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    23.4   SUCCESSORS AND ASSIGNS . . . . . . . . . . . . . . . . . . . . . . 29
    23.5   ENTIRE AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    23.6   WAIVER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    23.7   CAPTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    23.8   GOVERNING LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**ARTICLE XXIV - EXECUTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    24.1   COUNTERPARTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    24.2   RATIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Exhibit B
Page 5 of 46

# OPERATING AGREEMENT
## TRADING BAY FIELD
## COOK INLET, ALASKA

THIS AGREEMENT, entered into as of _June 12, 1996_ by and between Marathon Oil Company ("Marathon"), an Ohio corporation and Union Oil Company of California ("Union") a California corporation (collectively the "Parties").

## ARTICLE I - EXHIBITS - APPENDICES

**1.1    EXHIBITS**

The following exhibits are attached hereto and by this reference are made a part hereof;

A.    Exhibit A - Map
B.    Exhibit B - Lease Description
C.    Exhibit C, which is the Accounting Procedure for the determination of costs and expenses incurred in the conduct of operations under this Agreement.  If there is any conflict between this Agreement and Exhibit C, this Agreement shall govern.

## ARTICLE II - DEFINITIONS

**2.1    AREA or TRACT** - shall mean the State Lease ADL 18731 as described in Exhibits A and B.

**2.2    COSTS** - shall mean all costs and expenses, other than Lease Burdens, incurred in the development and operation pursuant to this Agreement and all other expenses that are herein made chargeable as Costs, determined in accordance with the Accounting Procedure set forth in Exhibit C hereto.

**2.3    DEVELOPMENT WELL** -  shall mean any well other than an Injection Well Drilled to a location within the Area and projected to the Pool for which such Area was established.

**2.4    DRILL, DRILLED OR DRILLING, DEEPEN OR PLUG BACK-** shall mean to perform all operations reasonably necessary and incident to the drilling, deepening or plugging back of a well, including testing, and completing and equipping for production or injection, or plugging and abandoning.

**2.5    EXPLORATORY WELL** - shall mean any well other than a Development Well or an Injection Well which is drilled to a new pool.



OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA


2.6    **INJECTION WELL** - shall mean any well Drilled or taken over for the injection of substances for the purpose of disposal or conducing pressure maintenance or secondary recovery operations.

2.7    **LEASE BURDENS** -  shall mean the royalty reserved to the lessor in an oil and gas lease, an overriding royalty, a production payment and any other burden upon the Working Interests.

2.8    **MARKET VALUE** - shall mean the arithmetical average price upon which the State of Alaska's royalty is paid and finally accepted on the Production during the relevant period from the Area.

2.9    **NON-DRILLING PARTY** - shall mean the Party or Parties who have had the right to participate in the Costs of Drilling, Deepening or Plugging Back a well in accordance with this Agreement at the commencement of such operation, and who have elected not to participate therein.

2.10    **PARTY OR PARTIES** -  shall mean a party to this Agreement.

2.11    **POOL** - shall mean an underground reservoir containing, or appearing to contain, a common accumulation of oil or gas.  Each zone of a structure which is completely separated from any other zone in the same structure is a Pool.

2.12    **PRODUCTION** - shall mean all oil, gas and hydrocarbons  produced and saved from the Area, except so much thereof as is used in the conduct of operation under this Agreement with or for the benefit of the Area.

2.13    **OPERATOR** - shall mean Union Oil Company of California and its successors, as the Operator designed in accordance with the Agreement, acting in that capacity, or any successor Operator selected pursuant to Article VI of this Agreement.

2.14    **WORKING INTEREST** - shall mean an interest, whether held under an oil and gas lease or otherwise, including a carried Working Interest, which interest is chargeable with and obligated to pay or bear, whether in cash or out of Production or otherwise, all or a portion of the Costs of operations conducted under this Agreement.

**Exhibit B**
**Page 7 of 46**



OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

## ARTICLE III - SUPERVISION OF OPERATIONS BY PARTIES

3.1    **OVER-ALL SUPERVISION.**  The Parties shall exercise over-all supervision and control of all matters pertaining to the development and operation of the Area pursuant to this Agreement.  In the exercise of such power each Party shall act solely in its own behalf in the capacity of an Individual Working Interest owner and not on behalf of the Working Interest Owners as an entirety.

3.2    **PARTICULAR POWERS AND DUTIES.**  The matters to be passed upon and decided by the Parties as provided herein or in the Agreement shall include, but not be limited to, the following:

A.    The appointment, removal and selection of successor Operators.

B.    The enlargement or contraction of the Area.

C.    The subsequent joinder of any Working Interest Owner to this Agreement.

D.    The kind, character and method of operation, including any type of pressure maintenance or secondary recovery.

E.    The drilling of any well within the Area either to recover Production or for use as an Injection Well, or for other purposes.

F.    The recompletion, workover, abandonment, or change of status of any well in the Area or use of any such well for injection or other purposes.

G.    The making of any single expenditure in excess of One Hundred Thousand Dollars ($100,000.00), except in the case of an emergency involving the preservation of life, environment or property.

H.    The selling or otherwise disposing of any major item of surplus material or equipment, the current list price of new equipment similar thereto being Five Thousand Dollars ($5,000.00) or more; provided, however, surplus material or equipment classified as junk may be disposed of by Operator at prevailing prices.

**Exhibit B**
**Page 8 of 46**

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

I.  The authorizing of charges to the joint account for services by consultants or any Party's technical personnel not covered by the charges set forth in Exhibit "C".

J.  The taking of periodic inventories under the terms of Exhibit "C".

K.  The designation of a representative to appear before any court or regulatory body in matters pertaining to operations hereunder; provided, however, that such designation shall not prevent a Party from appearing in person or from designating another representative in its behalf and at its own expense.

## ARTICLE IV - MANNER OF EXERCISING SUPERVISION

**4.1    VOTING PROCEDURE**

General.  In the supervision of an operation conducted by Operator the Parties chargeable with the costs of such operation shall have the right to vote thereon in proportion to their respective obligations for such Costs.

**4.2    POLL VOTES**

The Parties may decide any matter by vote taken by letter or facsimile, provided the matter is first submitted to each Party entitled to vote thereon. Operator will give prompt notice of the results of such voting to all such Parties.  Any such Party failing to vote on any matter for which a vote is provided by this Agreement within the time stated in such letter or facsimile shall be deemed to have voted in the negative.

**4.3    VOTE BINDING ON PARTIES**

Any approval, direction, consent, determination, redetermination, agreement, stipulation, designation or other decision of the Parties provided for in this Agreement which receives the affirmative vote herein specified shall be deemed given by and shall be binding upon all Parties to this Agreement, except as otherwise specified herein.

Exhibit B
Page 9 of 46



OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

4.4    VOTE REQUIRED

Except where specified otherwise in this Agreement, a vote of the owners of a majority of the Working Interests shall decide all issues to be decided hereunder.

ARTICLE V - INDIVIDUAL RIGHTS OF PARTIES

5.1    RESERVATION OF RIGHTS

The Parties severally reserve to themselves all their rights, except as otherwise provided in this Agreement.

5.2    SPECIFIC RIGHTS

Each Party owning a Working Interest shall have, among others, the following specific rights:

A.    Reports.  The right to receive from Operator copies of all reports to any governmental agency, reports of crude oil runs and stocks, inventory reports, well logs, engineering and geological data and all other information pertaining to operations hereunder.  All such reports and information shall be limited to factual and not interpretative data, unless accomplished by or charged to the Parties.  The cost of gathering and furnishing information not ordinarily furnished by Operator to the Parties shall be charged to the Party who requests the information.

B.    Access to such operations being conducted for the benefit thereof at all reasonable times to inspect such operations, wells and the records and data pertaining thereto.

Exhibit B
Page 10 of 46

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

## ARTICLE VI - OPERATOR

6.1    INITIAL OPERATOR

Union Oil Company of California is hereby designated as Operator.

6.2    RESIGNATION OR REMOVAL OF OPERATOR AND SELECTION OF SUC-
CESSOR

Any Operator shall have the right to resign at any time, but such resignation
shall not become effective so as to release such Operator from its duties and
obligations and terminate its rights as such for a period of six months after
notice of intention to resign has been served by an Operator on all Parties,
unless a new Operator shall have been selected and approved and shall have
taken over and assumed the duties and obligations of that Operator prior to
the expiration of said period. In all instances of resignation or removal, until
a successor Operator is selected and approved as hereinafter provided, the
Parties shall be jointly responsible for performance of the duties of that
Operator, and shall not later than 30 days before such resignation or removal
becomes effective appoint a common agent to represent them in any action
to be taken hereunder.

The resignation of the Operator shall not release that Operator from any
liability for any default by it hereunder occurring prior to the effective date of
its resignation.

Any Operator may, upon default or failure in the performance of its duties or
obligations hereunder be subject to removal by a vote representing fifty
percent (50%) or more of the voting power of the Parties. Such removal shall
be effective upon notice thereof to the Parties.

The resignation or removal of an Operator under this Agreement shall not
terminate its right, title, or interest as the owner of a Working Interest, but
upon the resignation or removal of an Operator becoming effective such
Operator shall deliver possession of all equipment, materials, and
appurtenances used in conducting the operations and owned by the Parties
to the duly qualified successor Operator or to the owners thereof if no such
new Operator is elected, to be used for the purpose of conducting operations
hereunder. Nothing herein shall be construed as authorizing removal of any

**Exhibit B**
**Page 11 of 46**

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

material, equipment and appurtenance needed for the preservation of any wells.

Whenever the Operator shall resign, or shall be removed as hereinabove provided or a change of an Operator is negotiated by the Parties, the Parties shall select a successor Operator. Such selection shall not become effective until the Operator so selected shall accept in writing the duties and responsibilities of Operator.

## ARTICLE VII - AUTHORITIES AND DUTIES OF OPERATOR

**7.1    OPERATOR**

A.    <u>General Duties</u>.   Operator shall be responsible for submitting all required reports to the State of Alaska and other regulatory authorities and shall, subject to subsection 3.2K, represent the Parties at hearings or other meetings held by any regulatory bodies pertaining to operations hereunder. Pursuant to the provisions of this Agreement, Operator shall have the exclusive right and duty to conduct operations according to plans and procedures as specified by the Parties and to do all things necessary and consistent therewith, including the execution of all contracts as Operator which affect drilling, reworking and servicing of wells, and construction and operation of facilities, and the purchasing of supplies, and shall prepare or assist in the preparation of any and all applications, reports, or other documents required by any governmental agency.

B.    <u>Records and Reports</u>.  Operator shall keep correct books, accounts and records and shall furnish the Parties with periodic reports of operations conducted by it pursuant to this Agreement. Daily or periodic reports for production, drilling and other operations shall be submitted as general practices dictate.

C.    <u>Wells Drilled, Deepened or Worked Over by Operator</u>.  All wells drilled by Operator through independent contractors shall be at not more than the usual rates prevailing in the area. Operator may employ its own tools and equipment, but the charge therefor shall not exceed the prevailing rate in the area and the work shall be performed under terms

7



OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

and conditions customary in the area in contracts of independent contractors doing work of a similar nature.

**7.2    OPERATIONS**

A.    <u>Workmanlike Conduct</u>. Operator shall conduct all operations in a good and workmanlike manner. Operator shall not be liable to the Parties for damages, unless such damages result from Operator's gross negligence or willful misconduct.

B.    <u>Liens and Encumbrances</u>. Operator shall endeavor to see that the lands and leases in the Area are kept free from all liens and encumbrances occasioned by operations, except the liens of Operator granted hereunder.

C.    <u>Employees</u>. All individuals employed by Operator in conducting operations shall be the employees of that party employing same, and their selection, hours of labor, compensation, and all other matters relating to their employment shall be determined by Operator.

D.    <u>Expenditures</u>.

1.    The Operator shall have the right to make expenditures up to an aggregate of one hundred thousand dollars ($100,000) for any single project of any kind, without consent of the Parties.

2.    For all projects exceeding fifty thousand dollars ($50,000) but less than fifty thousand dollars ($100,000), an informational Authorization for Expenditure (AFE) shall be prepared by the Operator and submitted to the Working Interest owners before work commences.

3.    All Projects exceeding one hundred thousand dollars ($100,000) shall require approval of the Parties. An AFE shall be prepared by the Operator and supplied to the Parties for approval. Response to a request for approval of an AFE shall be given to the Operator within forty-five (45) days after receipt of the request. The non-consent

Exhibit B
Page 13 of 46

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

provisions of Article IX shall apply if fewer than all Parties vote to approve the AFE.

4.  If, at any time, it becomes apparent that expenditures for an AFE and any Supplemental AFE's for such item previously approved pursuant to this Subsection 7.2D will be or has exceeded the authorized limit by ten percent (10%) or fifty thousand dollars ($50,000) whichever is greater, or by one million dollars ($1,000,000), the Operator shall notify the Parties and shall, without delay, prepare a Supplemental AFE. A Supplemental AFE shall also be prepared for an informational AFE if it becomes apparent that expenditures will have or have exceeded the $100,000 formal AFE threshold. The Supplemental AFE shall include reasons of the increased cost, and shall request approval for the additional expenditures anticipated. The Operator shall give verbal notification to the Parties advising that a Supplemental AFE may be required. The Parties shall have 3 business days from receipt of a Supplemental AFE to vote on the approval requested.

5.  Unless otherwise stated in an AFE or Supplemental AFE, the approval granted for the project described in the AFE or Supplemental AFE will be canceled if no work has been performed or money spent on the project six (6) months after the AFE or Supplemental AFE has received requisite approval, or six (6) months after proposed start date, whichever occurs first.

6.  If any emergency occurs, Operator may immediately make or incur such expenditures as in its opinion are required to deal with the emergency. Operator shall report to the Parties as promptly as practicable the nature of the emergency and the action taken and, as soon as practical, prepare an AFE if otherwise required by the provisions of this Sub-section 7.2D.

9

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

## ARTICLE VIII - DRILLING, DEEPENING, PLUGGING BACK OR ABANDONMENT OF EXPLORATORY, DEVELOPMENT AND INJECTION WELLS

**8.1    GENERAL PROVISIONS FOR EXPLORATORY, DEVELOPMENT AND INJECTION WELLS**

A.    <u>General</u>.  The Drilling, Deepening, Plugging Back or abandoning of a well within the Area shall be conducted only in accordance with the provisions of this Article VIII.

B.    <u>Operator to Conduct Operations</u>.  All Drilling, Deepening, Plugging Back, and abandoning operations shall be conducted by the Operator.

C.    <u>Notice of Proposed Operations</u>.  If any Party hereto should  desire to Drill any well within the Area, or, if any Party should desire to rework, sidetrack, Deepen, recomplete or Plug Back a dry hole or a well no longer capable of producing in paying quantities in which such Party has not otherwise relinquished its interest in the proposed objective Pool under this Agreement, the party desiring to Drill, rework, sidetrack, Deepen, recomplete or Plug back such a well shall give written notice of the proposed operation to the Parties who have not otherwise relinquished their interest in such objective Pool under this Agreement and to the other Parties in the case of a proposal for sidetracking or Deepening, specifying the work to be performed, the location, proposed depth, objective Pool and the estimated cost of the operation. All proposed operations shall be subject to the requirements of Article VII section 7.2 D.

D.    <u>Response to Notice</u>.  Within forty-five (45) days after receipt of such notice, each Party shall advise all other Parties, in writing, whether or not it approves and desires to participate in such operations.  If the Parties approve such operations, then the proposed operations shall be conducted by the designated Operator.  If any Party fails to respond to such notice within said forty-five (45) day period, it shall be deemed to have failed to approve such proposed operation and to have elected not to participate therein. Notwithstanding the provisions of the foregoing paragraph, if a drilling rig has suspended operations awaiting approval of redrilling, Deepening, Plugging Back or abandoning of a well, then the Parties receiving such notice shall have forty-eight (48) hours

**Exhibit B**
**Page 15 of 46**

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

(exclusive of Saturdays, Sundays, and legal holidays) after receipt thereof within which to notify the Parties giving such notice whether they approve and desire to participate in the proposed operations. All such notices given under this paragraph shall be by telephone, or facsimile, followed by written notice.

E.    <u>Fewer Than All Parties</u>. Whenever all Parties entitled to participate in approved operations fail to agree to participate, then within fifteen (15) days after expiration of said forty-five (45) days' notice period or within twenty-four (24) hours (exclusive of Saturdays, Sundays and legal holidays) after expiration of said forty-eight (48) hour notice period, each such Party who desires to participate in the approved operations shall give to the other Parties written notice (or in the case of the twenty-four (24) hour notice period, by telephone, or facsimile) of the election to participate in such approved operations. Failure to give such notice shall be deemed an election not to participate. Unless otherwise agreed by the Parties, the entire cost, risk, liability and expense of the Drilling, Deepening, or Plugging Back of a Development or Exploratory Well by fewer than all the Parties shall be borne by the Parties comprising the Drilling Party. No operations by fewer than all Parties shall be conducted in such a manner as to interfere or conflict with any other operations.

F.    <u>Abandonment of Non-Productive Pool within a Well</u>. In the event the proposed operation is the abandonment of a non-productive Pool, within a well, then the notice required in Subsection 8.1C. shall also be given to the Parties. If the Parties give notice of election, in the manner provided in Subsection 8.1D, to take over the well drilled into such Pool and if the Parties participating in the Costs of said well approve the proposed abandonment, the Parties electing not to abandon such pool shall take over said well upon such terms and conditions contained in Subsection 8.5.

G.    <u>Use of Equipment</u>. In the case of any Plugging Back or Deepening operation, the Drilling Party shall purchase, at salvage value, all casing, tubing and other equipment in the well.

11



OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

**8.2     EXPLORATORY WELLS**

    A.     Right to Drill.  If any Party desires to Drill, Deepen or Plug Back a well as an Exploratory Well, then it shall have the right to do so under the provisions of this Article VIII.

    B.     Drilling from Mobile Platforms.  The Drilling of an Exploratory Well from a mobile platform or drilling barge shall be outside the scope of this Agreement, but nothing herein contained shall be deemed to prevent the Drilling of such a well on the Tract by a Party owning a Working Interest therein.

    C.     Operations and Participation.  The Drilling, Deepening or Plugging Back of an Exploratory Well from any facility other than a mobile platform or drilling barge shall be accomplished in the following manner: In the event the proposed operation receives the approval of the Parties as provided in Subsection 8.1D or 8.1E, then each owner of a Working Interest in the Tract shall have the right to participate in proportion to its Working Interest in that Tract.  If fewer than all Working Interest owners approve such operations, then those electing to proceed shall conduct such operations at their sole cost, risk and expense.

**8.3     DEVELOPMENT WELLS**

    A.     Right to Drill.  If any Party desires to Drill, Deepen, or Plug Back a well as a Development Well, then it shall have the right to do so under the provisions of this Article VIII.

    B.     Operations and Participation.  The Drilling, Deepening or Plugging Back of a Development Well shall be accomplished in the following manner: In the event the proposed operation receives the approval of the Parties as provided in Subsection 8.1D or 8.1E, each Party shall have the right to participate therein in proportion to its Working Interest.

**8.4     RELINQUISHMENT AND REVERSION OF INTERESTS**

    A.     Operations by Less than All Parties.  In order for the Drilling Party to receive the benefits of this Section 8.4, the proposed operations shall

**Exhibit B**
**Page 17 of 46**

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

be commenced within six months after the expiration of the notice period provided in Subsection 8.1D or 8.1E, whichever is the later date.

B.    <u>Relinquishment of Interest by Non-Drilling Party</u>.  When a well which is Drilled, Deepened or Plugged Back by less than all Parties entitled to participate therein is completed as a producer, each Non-Drilling Party shall be deemed to have relinquished to the Drilling Party all of its operating rights and Working Interest in and to such Well, and Drilling Party shall make, or cause to be made, payments for Lease Burdens in respect of Production from said well, in accordance with Article XIII.

C.    <u>Reversion of Relinquished Interests</u>.  The operating rights and Working Interests relinquished by a Non-Drilling Party shall revert to it at such time as the Market Value, calculated by Drilling Party, of that Non-Drilling Party's share of the Production obtained from the well after such relinquishment (after deducting from such Market Value all taxes upon or measured by Production and all Lease Burdens ) shall equal the total of the following:

1)    One hundred per cent (100%) of that portion of the Costs incurred in operating the well (including the portion of costs of acquisition or use of platforms, pipelines or other facilities attributable to such operations by less than all Parties, but excluding the Costs provided for in this Subsection 8.4C(2)) that would have been charged to such Non-Drilling Party had all Parties entitled thereto participated therein; and

2)    Six hundred per cent (600%) in the case of an Exploratory Well, or four hundred per cent (400%) in the case of a Development Well, of that portion of the Costs incurred by Drilling Party in the Drilling, Deepening, or Plugging Back of said well, through and including the wellhead connections, that would have been chargeable to such Non-Drilling Party had all Parties entitled thereto participated therein.

D.    <u>Effect of Reversion</u>.  From and after reversion to a Non-Drilling Party of its relinquished interest in a well, such Non-Drilling Party shall share in the ownership of the well, the operating rights and Working Interest therein, the materials and equipment in or pertaining to the well, the

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

Production therefrom and the Costs of operating the well as otherwise provided in this Agreement.

**8.5    ABANDONMENT OF PRODUCING WELLS**

No well which is producing or has once produced shall be abandoned without approval of the Parties then owning a Working Interest therein.  If such approval is not obtained, then the Parties not desiring to abandon shall pay to such other Party the latter Party's proportionate share of the fair market value of the salvable material and equipment in and on such well determined at the time such abandonment is proposed, less such latter Party's estimated share of the cost of abandonment.  Upon receipt of said sum, the Party desiring to abandon said well shall assign to the other Parties, without warranty of title, all of its operating rights and Working Interest in the well and all subsequent Production therefrom, as to the Pool from which said well is then producing, or has once produced, but not as to any other Pool and all of its interest in the material and equipment in and on said well.  If such assignment or conveyance shall run in favor of more than one Party hereto, the interest covered thereby shall be shared by such Parties in the proportion that the interest of each Party assignee bears to the interest of all Parties assignee. The Party proposing such abandonment shall give the notice required in Subsection 8.1C to the Parties.  If the Parties give notice of election, in the matter provided in Subsection 8.1D, to take over said well and if the Parties then owning a Working Interest in said well approve the proposed abandonment, the Parties shall take over said well as provided in this Section 8.5.  Unless at the direction of the Parties the well is to be taken over for use in operations, the Operator shall plug and abandon the well for the account of the Parties owning a Working Interest therein. As used in this Section 8.5, "well" shall be deemed to apply separately to each Pool from which that well is then producing or has produced, and the value of the salvable material and equipment therein shall be attributed in proportion to the ownership thereof.

**8.6    INJECTION WELLS**

The Costs of Drilling, Deepening, Plugging Back, abandoning, or taking over a well as an Injection Well shall be borne by all the Parties for which the well is to be used for the purpose of disposal or pressure maintenance or

Exhibit B
Page 19 of 46

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

secondary recovery operations. All parties shall bear such Costs according to their respective Working Interest.

## ARTICLE IX - CONSTRUCTION OF CERTAIN FACILITIES

**9.1    GENERAL**

The construction of any production equipment, pipeline, or other facilities not related to secondary recovery or pressure maintenance programs, the cost of which exceeds One Million Five Hundred Thousand Dollars ($1,500,000.00), referred to in this Article IX as "Such Construction," shall be conducted in or for the benefit of the Area only in accordance with the provisions of this Article IX.  For the purposes of this Article IX, reference to Parties shall mean all Parties to be served by the proposed production equipment, pipeline, or other facility.

**9.2    OPERATOR TO CONDUCT OPERATIONS**

Such Construction shall be conducted by the Operator designated by the Parties participating in the Costs thereof.

**9.3    NOTICE OF PROPOSED CONSTRUCTION**

Any Party may propose Such Construction by giving to each of the other Parties written notice specifying the location, contemplated service, design, specifications, proposed operator, and estimated Costs of Such Construction.

**9.4    RESPONSE TO NOTICE**

Within forty-five (45) days after receipt of such notice, each Party shall advise all other Parties, in writing, whether or not it approves Such Construction and whether or not it desires to participate in Such Construction.  If the Parties approve Such Construction in the manner provided in Article IV, then Such Construction shall be conducted by the Operator.

Exhibit B
Page 20 of 46



**OPERATING AGREEMENT**
**TRADING BAY FIELD**
**COOK INLET, ALASKA**

**9.5    PARTICIPATION**

In the event Such Construction receives the approval of the Parties as provided in Section 9.4, each Party shall have the right to participate therein. Unless otherwise agreed by the Parties, the entire cost, risk, liability and expense of Such Construction by fewer than all of the Parties shall be borne by the Parties comprising the Participating Party (as hereinafter defined) in proportion to their respective interests in Such Construction as herein after provided. The Party or Parties electing to participate in Such Construction shall be referred to in this Article IX as "Participating Party."

**9.6    RELINQUISHMENT AND REVERSION OF INTERESTS**

A.    <u>Such Construction By Less Than All Parties</u>. In order for the Participating Party to receive the benefits of this Section 9.6, Such Construction shall be commenced within one (1) year after the expiration of the period provided in Section 9.4. Each Participating Party shall participate in Such Construction in the proportion of its Working Interest.

B.    <u>Non-Ownership and Relinquishment of Interest</u>. When any Party who is entitled to participate in such Construction elects not to participate therein, such Party referred to in this Article IX as "Non-Participating Party", it shall be deemed to have no interest in and shall not be entitled to the use of the facility constructed.

C.    <u>Acquisition of an Interest and Reversion of Relinquished Interest</u>. Within thirty (30) days after the production equipment, pipeline or other facility is put into service, operator of Such Construction shall furnish each Non-Participating Party a statement of the estimated Costs of Such Construction. Within sixty (60) days after receipt of such statement, each Non-Participating Party may elect to pay to the operator who conducted Such Construction an amount of money equal to the total of the following:

(1)    One hundred per cent (100%) of that portion of the Costs incurred in operating the facility that would have been charged to such Non-Participating Party had it participated in Such Construction;

Exhibit B
Page 21 of 46



OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

    (2)   One hundred thirty-five per cent (135%) of that portion of the Costs incurred and committed in Such Construction ; and

    (3)   Interest at the rate of one percent (1%) per month (or, if lower, the highest rate permitted by law) on such amounts computed from the month during which each portion of such Costs was paid. If a Non-Participating Party has elected to make the payment hereinabove provided, and does so within thirty (30) days after such election, such Non-Participating Party shall immediately have transferred to it that interest in that production equipment, pipeline or other facility as it would have had if it had participated in the construction thereof, and the operating rights and Working Interests which it relinquished by failing to participate in Such Construction shall at that time revert to such Party.

D.    <u>Payment by Operator</u>.  All payments received by Operator from a Non-Participating Party pursuant to Subsection 9.6C shall be paid promptly to the Participating Parties in the proportions in which they shared the Costs of Such Construction and Drilling.

## <u>ARTICLE X - RIGHT TO TAKE IN KIND AND FAILURE TO TAKE IN KIND -- UNDERLIFTING</u>

### 10.1   TAKING IN KIND

Each Party shall currently take in kind or separately dispose of its share of Production, but its share shall include any Production said Party is then making up as the result of its underlift pursuant to this Article X.  Each such Party shall have the right to construct, maintain, and operate all necessary facilities for that purpose, provided that they are so constructed, maintained and operated as not to interfere with operations.  Any extra expenditures incurred by reason of delivery in kind of any portion of the Production shall be borne by the receiving Party.  If a royalty owner has the right to take in kind a share of Production and fails to do so, each Party taking Production shall take its lessor's Royalty Share of Production.  On all purchases or sales each



OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

Party shall execute any division order or contract of sale pertaining to its interest.

## 10.2  UNDERLIFTING OF PRODUCTION

Notwithstanding the ownership of Production set forth in this Agreement, in the event any Party fails to take or otherwise dispose of its entire share of Production, the other Parties shall be entitled to take the Production not taken, and the Parties will cooperate in returning all Parties to balance of cumulative Production as soon as practicable.

## 10.3  ALLOCATION OF COSTS

Except as to Lease Burdens and taxes measured by production, no adjustment shall be made in Costs when a Party is underlifting or overlifting.  Lease Burdens and taxes measured by Production shall be borne by the Parties in proportion to the Production taken by each of them.

## 10.4  INDEMNITY

In the event any Party or Parties is underlifted and any such action causes the rate of production hereunder to be reduced, then said Party or Parties shall be solely responsible to the State of Alaska and any other royalty owner or overriding royalty owner for, and hold the other Parties harmless and indemnify them against, any and all claims whatsoever which arise as a result of such failure to take.

## ARTICLE XI - EXPENSE

## 11.1  BASIS OF CHARGE TO PARTIES

All Costs incurred for the benefit of the Area   initially shall be paid by Operator. Each Party shall reimburse Operator for its Working Interest share of such Costs except as otherwise provided in Articles VIII, IX, and X. All charges, credits and accounting shall be in accordance with Exhibit "C."

Exhibit B
Page 23 of 46