

# c o p a s

Council of Petroleum Accountants Societies

**Turning Energy Into Synergy**

# <u>1986 OFFSHORE ACCOUNTING PROCEDURE JOINT OPERATIONS</u>

(Formerly known as Bulletin 25)

## MODEL FORM INTERPRETATION        MFI – 19

**Publication/Revision Date ---- September 1987**

**Council Approved**

*Copyright © 1987 by the Council of Petroleum Accountants Societies, Inc. (COPAS)*



**EXHIBIT E-2**
**PAGE 1 OF 40**

**NOTE:**

**The Model Form Modification 1986-1 (MFM-1986-1) has been attached to the end of this Model Form Interpretation.**

# MODEL FORM INTERPRETATION 19

## ACCOUNTING PROCEDURE
## OFFSHORE JOINT OPERATIONS 1986

### TABLE OF CONTENTS

FOREWORD ........................................................................................................... 3
SPECIMEN, FORM 606 COPAS – 1986 ............................................................ 4
INTERPRETATIVE BULLETIN ....................................................................... 14
I.   GENERAL PROVISIONS ......................................................................... 14
    1.   Definitions ............................................................................................14
    2.   Statements and Billings.......................................................................14
    3.   Advances and Payments by Nonoperators ...........................................14
    4.   Adjustments .........................................................................................15
    5.   Audits...................................................................................................15
    6.   Approval by Nonoperators...................................................................15
II.  DIRECT CHARGES .................................................................................. 16
    1.   Rentals and Royalties...........................................................................16
    2.   Labor....................................................................................................16
    3.   Employee Benefits...............................................................................17
    4.   Material................................................................................................18
    5.   Transportation......................................................................................18
    6.   Services................................................................................................19
    7.   Equipment and Facilities Furnished by Operator................................19
    8.   Damages and Losses to Joint Property.................................................22
    9.   Legal Expense......................................................................................23
    10.  Taxes...................................................................................................23
    11.  Insurance.............................................................................................24
    12.  Communications..................................................................................25
    13.  Ecological and Environmental.............................................................25
    14.  Abandonment and Reclamation...........................................................26
    15.  Other Expenditures .............................................................................26
III. OVERHEAD ............................................................................................... 27
    GENERAL............................................................................................27
    1.   Overhead - Drilling and Producing Operations...................................28
    2.   Overhead - Major Construction ...........................................................30
    3.   Overhead - Catastrophe.......................................................................30
    4.   Amendment Of Rates...........................................................................31
IV.  PRICING OF JOINT ACCOUNT MATERIAL PURCHASES, TRANSFERS AND
    DISPOSITIONS ......................................................................................... 32
    1.   Purchases .............................................................................................32
    2.   Transfers And Dispositions..................................................................32
    3.   Premium Prices ...................................................................................33
    4.   Warranty Of Material Furnished By Operator .....................................34
V.   INVENTORIES ........................................................................................... 35
    1.   Periodic Inventories, Notice And Representation.................................35
    2.   Reconciliation And Adjustment Of Inventories ..................................35
    3.   Special Inventories...............................................................................35
    4.   Expense Of Conducting Inventories ....................................................35

Model Form Modification 1986-1 (MFM-1986-1)

*This bulletin has been reviewed by the Petroleum Accountants Societies through representation on the Council of Petroleum Accountants Societies.*

Copyright © 1988 - Council of Petroleum Accountants Societies

**EXHIBIT E-2**
**PAGE 4 OF 40**

# FOREWORD

The Petroleum Industry continues to expand its search for additional sources of hydrocarbon reserves and production in offshore waters which has brought about changes in methods of accounting unique to offshore operations. In view of the latest trends and requirements of accounting for the activities of the Petroleum Industry in the offshore environment, the Petroleum Accountants Societies, through representation on the Council of Petroleum Accountants Societies, have recognized these changes as they apply to offshore joint interest accounting and recommend the COPAS-1986 Offshore Accounting Procedure.

Development of the COPAS-1986 Offshore Accounting Procedure was governed by a policy decision to retain provisions of the COPAS-1984 Accounting Procedure except for additions or revisions necessary to recognize conditions unique to offshore operations. This was considered appropriate since COPAS-1984 had been very recently developed and reflected the most recent standards relative to joint interest accounting. As a consequence, a preferred and desirable continuity has been preserved between the two Accounting Procedures for provisions not unique to offshore operations. In keeping with this concept, the interpretative content of this bulletin remains essentially the same as presented in Bulletin No. 22 for COPAS-1984 Accounting Procedure except for additions or revisions reflected in the COPAS-1986 Offshore Accounting Procedure.

This bulletin is to explain, interpret and elaborate on the provisions of the COPAS-1986 Offshore Accounting Procedure and to acquaint the users with the intent which the COPAS-1986 writers attempted to set forth.

It is recommended that this bulletin be used as a guide to joint interest operations accounting in connection with all agreements to which COPAS-1986 is attached.

This bulletin does not replace previously published COPAS Bulletins which pertain to earlier dated COPAS Accounting Procedures and it is not intended that the provisions of the COPAS 1986 Offshore Accounting Procedure replace the provisions of any other Accounting Procedure which is presently a part of any existing agreement, except by agreement of the Parties to such agreements.

The Council is grateful to the COPAS Joint Interest Committee and all of the participating Petroleum Accountants Societies for the work contributed to the finalization of the COPAS-1986 Offshore Accounting Procedure and this bulletin.

**EXHIBIT E-2**
**PAGE 5 OF 40**

## Specimen, Form 606 COPAS – 1986

## EXHIBIT     "          "

*Attached to and made part of*..................................................................................................................
..........................................................................................................................................................................
..........................................................................................................................................................................
..........................................................................................................................................................................

# ACCOUNTING PROCEDURE
# OFFSHORE JOINT OPERATIONS

## I.    GENERAL PROVISIONS

1.    **Definitions**

"Joint Property" shall mean the real and personal property subject to the Agreement to which this Accounting Procedure is attached.

"Joint Operations" shall mean all operations necessary or proper for the development, operation, protection and maintenance of the Joint Property.

"Joint Account" shall mean the account showing the charges paid and credits received in the conduct of the Joint Operations and which are to be shared by the Parties.

"Operator" shall mean the party designated to conduct the Joint Operations.

"Non-Operators" shall mean the Parties of this Agreement other than the Operator.

"Parties" shall mean Operator and Non-Operators.

"First Level Supervisors" shall mean those employees whose primary function in Joint Operations is the direct supervision of other employees and/or contract labor directly employed on the Joint Property in a field operating capacity.

"Technical Employees" shall mean those employees having special and specific engineering, geological or other professional skills, and whose primary function in Joint Operations is the handling of specific operating conditions and problems for the benefit of the Joint Property.

"Personal Expenses" shall mean travel and other reasonable reimbursable expenses of Operator's employees.

"Material" shall mean personal property, equipment or supplies acquired or held for use on the Joint Property.

"Controllable Material" shall mean Material which at the time is so classified in the Material Classification Manual as most recently recommended by the Council of Petroleum Accountants Societies.

"Shore Base Facilities" shall mean onshore support facilities that during drilling, development, maintenance and producing operations provide such services to the Joint Property as receiving and transshipment point for supplies, materials and equipment; debarkation point for drilling and production personnel and services; communication, scheduling and dispatching center; other associated functions benefiting the Joint Property.

"Offshore Facilities" shall mean platforms and support systems such as oil and gas handling facilities, living quarters, offices, shops, cranes, electrical supply equipment and systems, fuel and water storage and piping, heliport, marine docking installations, communication facilities, navigation aids, and other similar facilities necessary in the conduct of offshore operations.

2.    **Statements and Billings**

Operator shall bill Non-Operators on or before the last day of each month for their proportionate share of the Joint Account for the preceding month. Such bills will be accompanied by statements which identify the authority for expenditure, lease or facility, and all charges and credits, summarized

by appropriate classifications of investment and expense except that items of Controllable Material and unusual charges and credits shall be separately identified and fully described in detail.

3.   **Advances and Payments by Non-Operators**

   A.   Unless otherwise provided for in the Agreement, the Operator may requite the Non-Operators to advance their share of estimated cash outlay for the succeeding month's operation within fifteen (15) days after receipt of the billing or by the first day of the month for which the advance is required, whichever is later. Operator shall adjust each monthly billing to reflect advances received from the Non-Operators.

   B.   Each Non-Operator shall pay its proportion of all bills within fifteen (15) days after receipt. If payment is not made within such time, the unpaid balance shall bear interest monthly at the prime rate in effect at _____ on the first day of the month in which delinquency occurs plus 1% or the maximum contract rate permitted by the applicable usury laws of the jurisdiction in which the Joint Property is located, whichever is the lesser, plus attorney's fees, court costs, and other costs in connection with the collection of unpaid amounts.

4.   **Adjustments**

   Payment of any such bills shall not prejudice the right of any Non-Operator to protest or question the correctness thereof; provided, however, all bills and statements rendered to Non-Operators by Operator during any calendar year shall conclusively be presumed to be true and correct after twenty-four (24) months following the end of any such calendar year, unless within the said twenty-four (24) month period a Non-Operator takes written exception thereto and makes claim on Operator for adjustment. No adjustment favorable to Operator shall be made unless it is made within the same prescribed period. The provisions of this paragraph shall not prevent adjustments resulting from a physical inventory of Controllable Material as provided for in Section V.

5.   **Audits**

   A.   A Non-Operator, upon notice in writing to Operator and all other Non-Operators, shall have the right to audit Operator's accounts and records relating to the Joint Account for any calendar year within the twenty-four (24) month period following the end of such calendar year; provided, however, the making of an audit shall not extend the time for the taking of written exception to and the adjustments of accounts as provided for in Paragraph 4 of this Section I. Where there are two or more Non-Operators, the Non-Operators shall make every reasonable effort to conduct a joint audit in a manner which will result in a minimum of inconvenience to the Operator. Operator shall bear no portion of the Non-Operators' audit cost incurred under this paragraph unless agreed to by the Operator. The audits shall not be conducted more than once each year without prior approval of Operator, except upon the resignation or removal of the Operator, and shall be made at the expense of those Non-Operators approving such audit.

   B.   The Operator shall reply in writing to an audit report within 180 days after receipt of such report.

6.   **Approval by Non-Operators**

   Where an approval or other agreement of the Parties or Non-Operators is expressly required under other sections of this Accounting Procedure and if the agreement to which this Accounting Procedure is attached contains no contrary provisions in regard thereto, Operator shall notify all Non-Operators of the Operator's proposal, and the agreement or approval of a majority in interest of the Non-Operators shall be controlling on all Non-Operators.

5

## II.   DIRECT CHARGES

Operator shall charge the Joint Account with the following items:

**1.   Rentals and Royalties**
Lease rentals and royalties paid by Operator for the Joint Operations.

**2.   Labor**
A.  (1)  Salaries and wages of Operator's field employees directly employed on the Joint Property in the conduct of Joint Operations.
(2)  Salaries and wages of Operator's employees directly employed on Shore Base Facilities or other Offshore Facilities serving the Joint Property if such costs are not charged under Paragraph 7 of this Section II.
(3)  Salaries of First Level Supervisors in the field.
(4)  Salaries and wages of Technical Employees directly employed on the Joint Property if such charges are excluded from the Overhead rates.
(5)  Salaries and wages of Technical Employees either temporarily or permanently assigned to and directly employed in the operation of the Joint Property if such charges are excluded from the overhead rates.

B.  Operator's cost of holiday, vacation, sickness and disability benefits and other customary allowances paid to employees whose salaries and wages are chargeable to the Joint Account under Paragraph 2A of this Section II. Such costs under this Paragraph 2B may be charged on a "when and as paid basis" or by "percentage assessment" on the amount of salaries and wages chargeable to the Joint Account under Paragraph 2A of this Section II. If percentage assessment is used, the rate shall be based on the Operator's cost experience.
C.  Expenditures or contributions made pursuant to assessments imposed by governmental authority which are applicable to Operator's costs chargeable to the Joint Account under Paragraphs 2A and 2B of this Section II.
D.  Personal Expenses of those employees whose salaries and wages are chargeable to the Joint Account under Paragraph 2A of this Section II.

**3.   Employee Benefits**
Operator's current costs of established plans for employees' group life insurance, hospitalization, pension, retirement, stock purchase, thrift, bonus, and ocher benefit plans of a like nature, applicable to Operator's labor cost chargeable to the Joint Account under Paragraphs 2A and 2B of this Section II shall be Operator's actual cost not to exceed the percent most recently recommended by the Council of Petroleum Accountants Societies.

**4.   Material**
Material purchased or furnished by Operator for use on the Joint Property as provided under Section IV. Only such Material shall be purchased for or transferred to the Joint Property as may be required for immediate use and is reasonably practical and consistent with efficient and economical operations. The accumulation of surplus stocks shall be avoided.

**5.   Transportation**
Transportation of employees and Material necessary for the Joint Operations but subject to the following limitations:
A.  If Material is moved to the Joint Property from the Operator's warehouse or other properties, no charge shall be made to the Joint Account for a distance greater than the distance from the nearest reliable supply store where like material is normally available or railway receiving point nearest the Joint Property unless agreed to by the Parties.

6

    B.  If surplus Material is moved to Operator's warehouse or other storage point, no charge shall be made to the Joint Account for a distance greater than the distance to the nearest reliable supply store where like material is normally available, or railway receiving point nearest the Joint Property unless agreed to by the Parties. No charge shall be made to the Joint Account for moving Material to other properties belonging to Operator, unless agreed to by the Parties.

    C.  In the application of subparagraphs A and B above, the option to equalize or charge actual trucking cost is available when the actual charge is $400 or less excluding accessorial charges. The $400 will be adjusted to the amount most recently recommended by the Council of Petroleum Accountants Societies.

**6.   Services**

The cost of contract services, equipment and utilities provided by outside sources, except services excluded by Paragraph 9 of Section II and Paragraphs i and ii of Section III. The cost of professional consultant services and contract services of technical personnel directly engaged on the Joint Property if such charges are excluded from the overhead rates. The cost of professional consultant services or contract services of technical personnel directly engaged in the operation of the Joint Property shall be charged to the Joint Account if such charges are excluded from the overhead rates.

**7.   Equipment and Facilities Furnished by Operator**

    A.  Operator shall charge the Joint Account for use of Operator-owned equipment and facilities, including Shore Base and/or Offshore Facilities, at rates commensurate with costs of ownership and operation. Such rates may include labor, maintenance, repairs, other operating expense, insurance, taxes, depreciation and interest on gross investment less accumulated depreciation not to exceed_____percent (_____%) per annum. In addition, for platforms only, the rate may include an element of the estimated cost of platform    dismantlement. Such rates shall not exceed average commercial rates currently prevailing in the immediate area of the Joint Property.

    B.  In lieu of charges in Paragraph 7A above, Operator may elect to use average commercial rates prevailing in the immediate area of the Joint Property less twenty percent (20%). For automotive equipment, Operator may elect to use rates published by the Petroleum Motor Transport Association.

**8.   Damages and Losses to Joint Property**

All costs or expenses necessary for the repair or replacement of Joint Property made necessary because of damages or losses incurred by fire, flood, storm, theft, accident, or other causes, except those resulting from Operators gross negligence or willful misconduct. Operator shall furnish Non-Operator written notice of damages or losses incurred as soon as practicable after a report thereof has been received by Operator.

**9.   Legal Expense**

Expense of handling, investigating and settling litigation or claims, discharging of liens, payments of judgments and amounts paid for settlement of claims incurred in or resulting from operations under the Agreement or necessary to protect or recover the Joint Property. except that no charge for services of Operator's legal staff or fees or expense of outside attorneys shall be made unless previously agreed to by the Parties. All other legal expense is considered to be covered by the overhead provisions of Section III unless otherwise agreed to by the Parties, except as provided in Section I, Paragraph 3.

**10.   Taxes**

All taxes of every kind and nature assessed or levied upon or in connection with the Joint Property, the operation thereof, or the production therefrom, and which taxes have been paid by the Operator for the benefit of the Parties. If the ad valorem taxes are based in whole or in part upon separate valuations of each party's working interest, then notwithstanding anything to the contrary herein, charges to the Joint Account shall be made and paid by the Parties hereto in accordance with the tax value generated by each party's working interest.

7

**EXHIBIT E-2**
**PAGE 9 OF 40**

11. **Insurance**
Net premiums paid for insurance required to be carried for the Joint Operations for the protection of the Parties. In the event Joint Operations are conducted at offshore locations in which Operator may act as self-insurer for Workers' Compensation and Employers' Liability, Operator may include the risk under its self-insurance program in providing coverage under State and Federal laws and charge the Joint Account at Operator's cost not to exceed manual rates

12. **Communications**
Costs of acquiring, leasing, installing, operating, repairing and maintaining communication systems including radio and microwave facilities between the Joint Property and the Operator's nearest Shore Base Facility. In the event communication facilities systems serving the Joint Property are Operator-owned, charges to the Joint Account shall be made as provided in Paragraph 7 of this Section II.

13. **Ecological and Environmental**
Costs incurred on the Joint Property as a result of statutory regulations for archaeological and geophysical surveys relative to identification and protection of cultural resources and/or other environmental or ecological surveys as may be required by the Bureau of Land Management or other regulatory authority. Also, costs to provide or have available pollution containment and removal equipment plus costs of actual control and cleanup and resulting responsibilities of oil spills as required by applicable laws and regulations.

14. **Abandonment and Reclamation**
Costs incurred for abandonment of the Joint Property, including costs required by governmental or other regulatory authority.

15. **Other Expenditures**
Any other expenditure not covered or dealt with in the foregoing provisions of this Section II, or in Section III and which is of direct benefit to the Joint Property and is incurred by the Operator in the necessary and proper conduct of the Joint Operations.

## III.  OVERHEAD

As compensation for administrative, supervision, office services and warehousing costs, Operator shall charge the Joint Account in accordance with this Section III.

Unless otherwise agreed to by the Parties, such charge shall be in lieu of costs and expenses of all offices and salaries or wages plus applicable burdens and expenses of all personnel, except those directly chargeable under Section II. The cost and expense of services from outside sources in connection with matters of taxation, traffic, accounting or matters before or involving governmental agencies shall be considered as included in the overhead rates provided for in this Section III unless such cost and expense are agreed to by the Parties as a direct charge to the Joint Account.

    i.   Except as otherwise provided in Paragraph 2 of this Section III, the salaries, wages and Personal Expenses of Technical Employees and/or the cost of professional consultant services and contract services of technical personnel directly employed on the Joint Property:
        (  ) shall be covered by the overhead rates.
        (  ) shall not be covered by the overhead rates.

    ii.   Except as otherwise provided in Paragraph 2 of this Section III, the salaries, wages and Personal Expenses of Technical Employees and/or costs of professional consultant services and contract services of technical personnel either temporarily or permanently assigned to and directly employed in the operation of the Joint Property:
        (  ) shall be covered by the overhead rates.
        (  ) shall not be covered by the overhead rates.

**EXHIBIT E-2**
**PAGE 10 OF 40**

1.  **Overhead - Drilling and Producing Operations**

    As compensation for overhead incurred in connection with drilling and producing operations, Operator shall charge on either:

    (     ) Fixed Rate Basis, Paragraph 1A, or

    (     ) Percentage Basis, Paragraph 1B

A.  Overhead - Fixed Rate Basis

    (1)  Operator shall charge the Joint Account at the following rates per well per month:

    Drilling Well Rate $_____     (Prorated for less than a Full month)

    Producing Well Rate $_____

    (2)  Application of Overhead - Fixed Rate Basis for Drilling Well Rate shall be as follows:

    (a)  Charges for drilling wells shall begin on the date when drilling or completion equipment arrives on location and terminate on the date the drilling or completion equipment moves off location or rig is released, whichever occurs first, except that no charge shall be made during suspension of drilling operations for fifteen (15) or more consecutive calendar days.

    (b)  Charges for wells undergoing any type of workover or recompletion for a period of five (5) consecutive work days or more shall be made at the drilling well rate. Such charges shall be applied for the period from date workover operations, with rig or other units used in workover, commence through date of rig or other unit release, except chat no charge shall be made during suspension of operations for fifteen (15) or more consecutive calendar days.

    (3)  Application of Overhead - Fixed Rate Basis for Producing Well Race shall be as follows:

    (a)  An active well either produced or injected into for any portion of the month shall be considered as a one-well charge for the entire month.

    (b)  Each active completion in a multi-completed well in which production is not commingled down hole shall be considered as a one-well charge providing each completion is considered a separate well by the governing regulatory authority.

    (c)  An inactive gas well shut in because of overproduction or failure of purchaser to take the production shall be considered as a one-well charge providing the gas well is directly connected to a permanent sales outlet.

    (d)  A one-well charge shall be made for the month in which plugging and abandonment operations are completed on any well. This one-well charge shall be made whether or not the well has produced except when drilling well rate applies.

    (e)  All other inactive wells (including but not limited to inactive wells covered by unit allowable, lease allowable, transferred allowable, etc.) shall not qualify for an overhead charge.

    (4)  The well rates shall be adjusted as of the first day of April each year following the effective date of the agreement to which this Accounting Procedure is attached. The adjustment shall be computed by multiplying the rate currently in use by the percentage increase or decrease in the average weekly earnings of Crude Petroleum and Gas Production Workers for the last calendar year compared to the calendar year preceding as shown by the index of average weekly earnings of Crude Petroleum and Gas Fields Production Workers as published by the United States Department of Labor, Bureau of Labor Statistics, or the equivalent Canadian index as published by Statistics Canada, as applicable. The adjusted rates shall be the rates currently in use, plus or minus the computed adjustment.

B.  Overhead - Percentage Basis

    (1)  Operator shall charge the Joint Account at the following rates:

    (a)  Development

    _____ Percent (_____%) of cost of Development of the Joint Property exclusive of costs provided under Paragraph 9 of Section II and all salvage credits.

    (b)  Operating

    _____ Percent (_%) of the cost of Operating the Joint Property exclusive of costs provided under Paragraphs 1 and 9 of Section II, all salvage credits, the value of injected substances purchased for secondary recovery and all taxes and assessments

**EXHIBIT E-2**
**PAGE 11 OF 40**

which are levied, assessed and paid upon the mineral interest in and to the Joint Property.

(2) Application of Overhead - Percentage Basis shall be as follows:

For the purpose of determining charges on a percentage basis under Paragraph IB of this Section III, development shall include all costs in connection with drilling, redrilling, or deepening of any or all wells, and shall also include any remedial operations requiring a period of five (5) consecutive work days or more on any or all wells; also, preliminary expenditures necessary in preparation for drilling and expenditures incurred in abandoning when the well is not completed as a producer, and original cost of construction or installation of fixed assets, the expansion of fixed assets and any other project clearly discernible as a fixed asset, except Major Construction as defined in Paragraph 2 of this Section III. All other costs shall be considered as Operating except that catastrophe costs shall be assessed overhead as provided in Section III, Paragraph 3.

2. **Overhead - Major Construction**

To compensate Operator for overhead costs incurred in the construction and installation of fixed assets, the expansion of fixed assets, and any ocher project clearly discernible as a fixed asset required for the development and operation of the Joint Property, or in the dismantling for abandonment of platforms and related production facilities, Operator shall either negotiate a rate prior to the beginning of construction, or shall charge the Joint Account for Overhead based on the following rates for any Major Construction project in excess of $_____.

A. If the Operator absorbs the engineering, design and drafting costs related to the project:
   (1) _____% of total costs if such costs are more than $ _____ but less than $100,000; plus
   (2) _____% of total costs in excess of $100,000 but less than $1,000,000; plus
   (3) _____% of total costs in excess of $1,000,000.

B. If the Operator charges engineering, design and drafting costs related to the project directly to the Joint Account:
   (1) _____% of total costs if such costs are more than $_____ but less than $100,000; plus
   (2) _____% of total costs in excess of $100,000 but less than $1,000,000; plus
   (3) _____% of total costs in excess of $1,000,000.

Total cost shall mean the gross cost of any one project. For the purpose of this paragraph, the component parts of a single project shall not be treated separately and the cost of drilling and workover wells and artificial lift equipment shall be excluded.

On each project, Operator shall advise Non-Operator(s) in advance which of the above options shall apply. In the event of any conflict between the provisions of this paragraph and those provisions under Section II, Paragraph 2 or Paragraph 6, the provisions of this paragraph shall govern.

3. **Overhead - Catastrophe**

To compensate Operator for overhead costs incurred in the event of expenditures resulting from a single occurrence due to oil spill, blowout, explosion, fire, storm, hurricane, or other catastrophes as agreed to by the Parties, which are necessary to restore the Joint Property to the equivalent condition that existed prior to the event causing the expenditures, Operator shall either negotiate a rate prior to charging the Joint Account or shall charge the Joint Account for overhead based on the following rates:

(1) _____ % of total costs through $100,000; plus
(2) _____ % of total costs in excess of $100,000 but less than $1,000,000; plus
(3) _____ % of total costs in excess of $1,000,000.

Expenditures subject to the overheads above will not be reduced by insurance recoveries, and no other overhead provisions of this Section III shall apply.

4. **Amendment of Rates**

The Overhead rates provided for in this Section III may be amended from time to time only by mutual agreement between the Parties hereto if, in practice, the rates are 'found to be insufficient or excessive.

**EXHIBIT E-2**
**PAGE 12 OF 40**

## IV.  PRICING OF JOINT ACCOUNT MATERIAL PURCHASES, TRANSFERS AND DISPOSITIONS

Operator is responsible for Joint Account Material and shall make proper and timely charges and credits for all Material movements affecting the Joint Property. Operator shall provide all Material for use on the Joint Property; however, at Operator's option, such Material may be supplied by the Non-Operator. Operator shall make timely disposition of idle and/or surplus Material, such disposal being made either through 'sale to Operator or Non-Operator, division in kind, or sale to outsiders. Operator may purchase, but shall be under no obligation to purchase, interest of Non-Operators in surplus condition A or B Material. The disposal of surplus Controllable Material not purchased by the Operator shall be agreed to by the Parties.

1.  **Purchases**

    Material purchased shall be charged at the price paid by Operator after deduction of all discounts received.  In case of Material found to be defective or returned to vendor for any other reasons, credit shall be passed to the Joint Account when adjustment has been received by the Operator.

2.  **Transfers and Dispositions**

    Material furnished to the Joint Property and Material transferred from the Joint Property or disposed of by the Operator, unless otherwise agreed to by the Parties, shall be priced on the following basis exclusive of cash discounts:

    A.  New Material (Condition A)

    (1)  Tubular Goods Other than Line Pipe

        (a)  Tubular goods, sized 2⅜ inches OD and larger, except line pipe, shall be priced at Eastern mill published carload base prices effective as of date of movement plus transportation cost using the 80,000 pound carload weight basis to the railway receiving point nearest the Joint Property for which published rail rates for tubular goods exist. If the 80,000 pound rail rate is not offered, the 70,000 pound or 90,000 pound rail rate may be used. Freight charges for tubing will be calculated from Lorain, Ohio and casing from Youngstown, Ohio.

        (b)  For grades which are special to one mill only, prices shall be computed at the mill base of that mill plus transportation cost from that mill to the railway receiving point nearest the Joint Property as provided above in Paragraph 2.A.(1)(a). For transportation cost from points other than Eastern mills, the 30,000 pound Oil Field Haulers Association interstate truck rate shall be used.

        (c)  Special end finish tubular goods shall be priced at the lowest published out-of-stock price, f.o.b. Houston, Texas, plus transportation cost, using Oil Field Haulers Association interstate 30,000 pound truck rate, to the railway receiving point nearest the Joint Property.

        (d)  Macaroni tubing (size less than 2⅜ inch OD) shall be priced at the lowest published out-of-stock prices f.o.b. the supplier plus transportation costs, using the Oil Field Haulers Association interstate truck rate per weight of tubing transferred, to the railway receiving point nearest the Joint Property.

    (2)  Line Pipe

        (a)  Line pipe movements (except size 24 inch OD and larger with walls ¾ inch and over) 30,000 pounds or more shall be priced under provisions of tubular goods pricing in Paragraph A.(1)(a) as provided above. Freight charges shall be calculated from Lorain, Ohio.

        (b)  Line pipe movements (except size 24 inch OD and larger with walls ¾ inch and over) less than 30,000 pounds shall be priced at Eastern mill published carload base prices effective as of date of shipment, plus 20 percent, plus transportation costs based on freight rates as set forth tinder provisions of tubular goods pricing in Paragraph A.(1)(a) as provided above. Freight charges shall be calculated from Lorain, Ohio.

        (c)  Line pipe 24 inch OD and over and ¾ inch wall and larger shall be priced f.o.b. the point of manufacture at current new published prices plus transportation cost to the railway receiving point nearest the Joint Property.

11

(d) Line pipe, including fabricated line pipe, drive pipe and conduit not listed on published price lists shall be priced at quoted prices plus freight to the railway receiving point nearest the Joint Property or at prices agreed to by the Parties.

(3) Other Material shall be priced at the current new price, in effect at date of movement, as listed by a reliable supply store nearest the Joint Property, or point of manufacture, plus transportation costs, if applicable, to the railway receiving point nearest the Joint Property.

(4) Unused new Material, except tubular goods, moved from the Joint Property shall be priced at the current new price, in effect on date of movement, as listed by a reliable supply store nearest the Joint Property, or point of manufacture, plus transportation costs, if applicable, to the railway receiving point nearest the Joint Property. Unused new tubulars will be priced as provided above in Paragraph 2 A (1) and (2).

B. Good Used Material (Condition B)

Material in sound and serviceable condition and suitable for reuse without reconditioning:

(1) Material moved to the Joint Property
At seventy-five percent (75%) of current new price, as determined by Paragraph A.

(2) Material used on and moved from the Joint Property
(a) At seventy-five percent (75%) of current new price, as determined by Paragraph A, if Material was originally charged to the Joint Account as new Material or
(b) At sixty-five percent (65%) of current new price, as determined by Paragraph A, if Material was originally charged to the Joint Account as used Material.

(3) Material not used on and moved from the Joint Property
At seventy-five percent (75%) of current new price as determined by Paragraph A.

The cost of reconditioning, if any, shall be absorbed by the transferring property.

C. Other Used Material

(1) Condition C
Material which is not in sound and serviceable condition and not suitable for its original function until after reconditioning shall be priced at fifty percent (50%) of current new price as determined by Paragraph A. The cost of reconditioning shall be charged to the receiving property, provided Condition C value plus cost of reconditioning does not exceed Condition B value.

(2) Condition D
Material, excluding junk, no longer suitable for its original purpose, but usable for some other purpose shall be priced on a basis commensurate with its use. Operator may dispose of Condition D Material under procedures normally used by Operator without prior approval of Non-Operators.
(a) Casing, tubing, or drill pipe used as line pipe shall be priced as Grade A and B seamless line pipe of comparable size and weight. Used casing, tubing or drill pipe utilized as line pipe shall be priced at used line pipe prices.
(b) Casing, tubing or drill pipe used as higher pressure service lines than standard tine pipe, e.g. power oil lines, shall be priced under normal pricing procedures for casing, tubing, or drill pipe. Upset tubular goods shall be priced on a non-upset basis.

(3) Condition E
Junk shall be priced at prevailing prices. Operator may dispose of Condition F Material under procedures normally utilized by Operator without prior approval of Non-Operators.

D. Obsolete Material

Material which is serviceable and usable for its original function but condition and/or value of such Material is not equivalent to that which would justify a price as provided above may be specially priced as agreed to by the Parties. Such price should result in the Joint Account being charged with the value of the service rendered by such Material.

E. Pricing Conditions

(1) Loading or unloading costs may be charged to the Joint Account at the rate of twenty-five cents (25¢) per hundred weight on all tubular goods movements, in lieu of actual loading or unloading costs sustained at the stocking point. The above rate shall be adjusted as of the first day of April each year following January 1,1985 by the same percentage increase or decrease used to adjust overhead rates in Section III, Paragraph 1.A(4). Each year, the rate

12

calculated shall be rounded to the nearest cent and shall be the rate in effect until the first day of April next year. Such rate shall be published each year by the Council of Petroleum Accountants Societies.

(2) Material involving erection costs shall be charged at applicable percentage of the current knocked-down price of new Material.

3. **Premium Prices**
Whenever Material is not readily obtainable at published or listed prices because of national emergencies, strikes or other unusual causes over which the Operator has no control, the Operator may charge the Joint Account for the required Material at the Operator's actual cost incurred in providing such Material, in making it suitable for use, and in moving it to the Joint Property; provided notice in writing is furnished to Non-Operators of the proposed charge prior to billing Non-Operators for such Material. Each Non-Operator shall have the right, by so electing and notifying Operator within ten days after receiving notice from Operator, to furnish in kind all or part of his share of such Material suitable for use and acceptable to Operator.

4. **Warranty of Material Furnished By Operator**
Operator does not warrant the Material furnished. In case of defective Material, credit shall not be passed to the Joint Account until adjustment has been received by Operator from the manufacturers nor their agents.

# V.    INVENTORIES

The Operator shall maintain detailed records of Controllable Material.

1. **Periodic Inventories, Notice and Representation**
At reasonable intervals, inventories shall be taken by Operator of the Joint Account Controllable Material. Written notice of intention to take inventory shall be given by Operator at least thirty (30) days before any inventory is to begin so that Non-Operators may be represented when any inventory is taken. Failure of Non-Operators to be represented at an inventory shall bind Non-Operators to accept the inventory taken by Operator

2. **Reconciliation and Adjustment of Inventories**
Adjustments to the Joint Account resulting from the reconciliation of a physical inventory shall be made within six months following the taking of the inventory. Inventory adjustments (shall be made by Operator to the Joint Account for overages and shortages, but, Operator shall be held accountable only for shortages due to lack of reasonable diligence.

3. **Special Inventories**
Special inventories may be taken whenever there is any sale, change of interest, or change of Operator in the Joint Property. It shall be the duty of the party selling to notify all other Parties as quickly as possible after the transfer of interest takes place. In such cases, both the seller and the purchaser shall be governed by such inventory. In cases involving a change of Operator, all Parties shall be governed by such inventory.

4. **Expense of Conducting Inventories**
   A. The expense of conducting periodic inventories shall not be charged to the Joint Account unless agreed to by the Parties.
   B. The expense of conducting special inventories shall be charged to the Parties requesting such inventories, except inventories required due to change of Operator shall be charged to the Joint Account.

## ACCOUNTING PROCEDURE OFFSHORE JOINT OPERATIONS

### COPAS 1986
### INTERPRETATIVE BULLETIN

### I.    GENERAL PROVISIONS

1.    **Definitions**

"Shore Base Facilities" are onshore work sites conveniently located to the offshore operation to provide necessary support facilities and services. It functions to minimize the cost of boat travel time and other transportation and handling costs involved in getting personnel, services, equipment and supplies to and from the offshore work site. For more information, refer to COPAS Bulletin No.20, Shore Base Facilities Accounting Guidelines.

"Offshore Facilities" are associated with developed offshore producing fields and subsequent drilling and workover operations. They consist of offshore platforms and facilities located thereon required in the immediate area of the offshore operations site to handle crude, gas and water production; provide accommodations for living quarters, offices, communications material and equipment handling and other facilities requited in offshore operations.

2.    **Statements and Billings**

Charges and credits should be classified to enable nonoperator to meet government requirements and make proper distribution between capital expenditures (segregated by tangibles and intangibles) and operating expenses, and further identified as labor, Material, transportation, contract services, employee benefits, overhead by type and other such classifications as set out in COPAS Bulletin No. 1, Classifications for Use in Summary Form Billings.

The statement should detail Controllable Material as to quantity, description, price, sales tax, condition and other appropriate information for accounting purposes.

The statement should detail any unusual charges and credits applicable to the joint account. Examples of such transactions would be lease rentals, ad valorem taxes, legal expenses, damages, well contributions, audit adjustments and audit expenses. Each Authority for Expenditure (AFE) should be identified by AFE number and further identified by well number, facility, project or other appropriate identification.

3.    **Advances and Payments by Nonoperators**

A.    When the Nonoperators are required by Operator to advance their share of the estimated cash outlay for the succeeding month's operation, the amount of such cash advances paid in excess of actual expenditures shall be adjusted by Operator on the next monthly billing.

14

B.  Remittances should be made promptly by the Nonoperators in accordance with the terms of the contract. If such remittances are not made timely, interest should accrue monthly on the unpaid balance at the prime rate of the stated bank in paragraph B. It is recognized, subject to provisions to the contrary, that the Operator has advanced his money to finance the operations; and, if the remittances by Nonoperator are timely, or if interest payments are made on delinquent accounts, the Nonoperator still enjoys a more favorable financial position. It is suggested that interest applied by Operators when applicable should be accepted without reservation or criticism by Nonoperators who do not remit in accordance with the provisions of the contract. To encourage the enforcement of this provision, any policy by the Operator of placing a notation on his billings to the effect that the interest provision is to be applied is hereby sanctioned. Attention is directed to the maximum contract interest rates permitted by the applicable usury laws.

4.  **Adjustments**

The monthly Joint Account billing should be paid as rendered by the Operator. If any item on the Operator's statement is questionable, the payment for such item should be included by the Nonoperator with the remainder of the billing. A request for an adjustment or explanation of the item in question should be directed promptly to the Operator. The Operator should answer such request promptly; and if an adjustment is in order, he should issue a credit (or debit) memorandum or advise the Nonoperator of the corrections on the next monthly billing. A request for adjustment or explanation shall not change the normal two-year formal audit limitation unless agreed to by the Operator.

When the total monthly billing to a particular Nonoperator s account reflects a credit balance, the Operator's check should follow within fifteen (15) days to settle the account, except where inventory and/or ownership adjustments are involved. In these instances some Operators effect distribution after collection of sufficient funds from the Nonoperators.

5.  **Audits**

A.  Audits should be initiated and conducted in accordance with COPAS Bulletin No.3, Joint Interest Audits in the Petroleum Industry, Guides to Protocol and Procedures.

B.  A written reply to the initial audit report is required from the Operator within 180 days after receipt of such report. It should be noted that this response time is a contractual obligation and is intended to insure the granting of credit or a complete explanation for denial within that time for a substantial portion, if not all, of the audit exceptions. Rebuttals by the auditor and subsequent responses by the Operator should also be made promptly to avoid long delays in resolving exceptions. It would be expected that such rebuttals and responses would be provided more quickly than the initial audit response.

6.  **Approval by Nonoperators**

This provision says that the majority in interest of Nonoperators may approve the Operator's proposal if no other voting provisions are in the Accounting Procedure or the Agreement of which the Accounting Procedure is a part. This provision does not apply to Section III Overhead, Paragraph 4, Amendment of Rates, which requires mutual agreement of the Parties.

15

**EXHIBIT E-2**
**PAGE 17 OF 40**

# II.  DIRECT CHARGES

1. **Rentals and Royalties**

   No comments necessary.

2. **Labor**

   A.

   (1) "Salaries and wages of Operator's field employees directly employed on the Joint Property in the conduct of Joint Operations."

   Field employees are defined as employees below First Level Supervisor directly employed on the Joint Property. In most instances the original time sheets or some other written documentation should show the time spent on any particular job or Joint Property; and the charge should be based upon such time shown. in some instances, however, certain employees may directly serve a number of properties, each having one or more wells, and it may not be practical nor equitable to use time as a basis for the charge due to location of employees' headquarters (dog houses, etc.), travel time required, common facilities serving properties manned by the employee and other reasons. In such instances, it is sometimes more feasible to allocate the charge to all properties served on a well, or other equitable basis, than on the time spent on the individual properties.

   (2) "Salaries and wages of Operator's employees directly employed on Shore Base Facilities or other Offshore Facilities serving the Joint Property if such costs are not charged under paragraph 7 of this Section II."

   This provision recognizes there could be direct labor charges made to the Joint Account for Operator's employees at Shore Base Facilities or Offshore Facilities serving the Joint Property. Therefore, when labor costs are incurred for a particular property, they may be charged direct to that property; e.g., labor for loading casing for a drilling well.

   (3) "Salaries of First Level Supervisors in the field."

   In addition to supervising basic lease and facility operation and maintenance, the First Level Supervisors may spend part of their time supervising special construction projects and overseeing drilling and well remedial work.

   The First Level Supervisors do not have an engineering or administrative staff and rely upon the staff associated with an administrative or functional office above the first level of supervision for these services, which are included in the overhead.

   The salaries and wages incurred by the First Level Supervisors may be charged direct or apportioned to all properties served on an equitable basis consistent with the Operator's accounting practices. Due to the variation in job classifications assigned to First Level Supervisors by the various Operators, it is recommended that the Parties be in agreement as to which job classifications are to be considered as First Level Supervisors at the time the agreement is negotiated.

   (4) "Salaries and wages of Technical Employees directly employed on the Joint Property if such charges are excluded from the overhead rates."

   (5) "Salaries and wages of Technical Employees either temporarily or permanently assigned to and directly employed in the operation of the Joint Property if such charges are excluded

16

**EXHIBIT E-2**
**PAGE 18 OF 40**

from the overhead rates." Paragraph (5) recognizes that a Technical Employee is not required to be physically on the property in order for his time to be a direct charge when performing duties benefiting the Joint Property.

Under Paragraphs (4) and (5) it is not intended that the Joint Account will be charged for the salaries and wages of Technical Employees after the specific operating condition or problem requiring their service ceases to exist. Technical Employees usually have no supervisory authority except that required to resolve the particular problem to which they are assigned. Operator shall maintain documentation of time worked.

B. Operator's cost of holiday, vacation, sickness, disability benefits, jury duty and excused allowances are recognized Joint Account costs, chargeable on a "when and as paid" basis or by "percentage assessment". Unless an employee is regularly assigned to a particular property for the entire year, it is very difficult to make an equitable charge by the "when and as paid" basis. It is generally agreed that the "percentage assessment" provides a more equitable distribution of these costs. It is recommended that the "percentage assessment" be reviewed currently and that proper adjustments be made in the rate to provide, over a period of time, that actual costs are distributed to the properties served. This may require that any balance in the accrual account be used in determining the new adjusted rate.

C. Costs pursuant to governmental authority are recognized Joint Account costs. Since these costs are limited, being based upon a maximum amount earned by each employee and the maximum earnings may be different for each category of charge, the cost terminates at various times during the year for individual employees. Although it is acceptable to determine the average time for payout of each category and discontinue such charges at the expiration of that period, this usually produces inequities in charges to the individual properties. This is particularly true if a property is discontinued in the early part of the year, or begins operations in the latter part of the year. For this reason, it is recommended that a percentage be determined for twelve months to spread the costs over the entire year

D. Travel and reimbursable Personal Expenses of those employees serving the Joint Property should be charged equitably and consistent with wages and salaries as provided under "A" above. Personal Expenses may include relocation expenses such as real estate fees, closing costs, compensation for loss on sale of home, carpeting and drapery expenses, etc., unless such move is for the primary benefit of the Operator. Personal expenses may also include tax assistance payments on behalf of the employee.

3.    **Employee Benefits**

Employee benefits are generally considered to be a part of the employer's total labor cost. The operating agreement usually provides that the Operator shall charge the Joint Account with the current cost of established plans for employees' group life insurance, hospitalization, pension, retirement, stock purchase, thrift, bonus and other benefit plans of a like nature applicable to Operator's labor cost, provided however, the total of such charges shall not exceed the contract limitations. Employee benefits may be generally defined as the types of plans enumerated above and other established plans, such as supplemental or catastrophic medical insurance for employees and dependents, accident and disability insurance and military service benefits which provide for the welfare of the Operator's employees, their families or beneficiaries, and which are made available to all employees of the Operator on an equitable basis. The cost of such plans may be borne entirely by the Operator or jointly by the Operator and the employees. Only the Operator's share of these costs is chargeable to the Joint Account.

17

**EXHIBIT E-2**
**PAGE 19 OF 40**

Established plans are those made available to all employees on a regular basis. Such plans may be established in accordance with and subject to collective bargaining agreements.

Costs which are primarily beneficial to the Operator should be excluded from employee benefits and treated as overhead, for which the Operator is compensated under the provisions of Section III. Such costs to be borne by the Operator would include industrial nurse or doctor, safety awards, service awards, employees' credit union, company magazines and periodicals, social functions, dinners and programs for retirements, safety, etc., recreational programs and facilities, Christmas bonuses given to selected employees and other special benefits available only to executives, certain employees or groups on a selective basis. Employee benefits normally considered chargeable to a Joint Account are detailed in COPAS Interpretation No. 11.

Charges may be made to the Joint Account for benefit plans expenses on a "when and as paid" basis or by "percentage assessment on the amount of the labor costs. It is generally agreed that the "percentage assessment" provides a more equitable distribution of these costs. If the "percentage assessment" method is used, it should be based on the Operator's actual cost experience, however, the application of a rate determined from the preceding year's experience may be considered as compliance with the "current cost requirement. Under either method the Operator's own cost of administering such plans should be excluded. In determination of actual cost experience, any dividends or refunds received which are applicable to insurance or annuity policies should be used to reduce the cost of such policies.

There is considerable variation in the actual cost of benefit plans in various companies in the industry. Some of the factors causing these variations are number of employees; average age of employees; types of plans established; methods of funding (contributory or noncontributory, trustee or insured) and collective bargaining agreement requirements. Since these wide variations exist, prior COPAS Accounting Procedures contained a fixed percent as the maximum employee benefits that could be charged to the Joint Account. Due to the wide variations in benefit plans costs and the frequent changing of the percentage, the 1986 Accounting Procedure does not contain a fixed percentage but provides for the maximum percentage to be as recommended annually by COPAS. This eliminates the need to amend the Accounting Procedure as periodic changes occur. The Operator should determine annually whether his costs equal or exceed the stipulated percent of labor before continuing to make charges at that rate. The 'percentage assessment or "when and as paid" rate is applicable to the Operator's labor costs under Section II, Paragraphs 2A and 2B which are chargeable directly to the Joint Account but not applicable to overhead charges or contract labor.

4.    **Material**
      No comments necessary.

5.    **Transportation**
      Transportation expense can be defined as the 'cost incurred from the point where Material and/or personnel is ready for movement until the cargo reaches its destination or delivery point". This activity is largely of a physical or mechanical nature and is readily adaptable to standardization and control.

      Transportation shall include all costs incurred in the transportation of employees, equipment, Material and supplies necessary for the development, maintenance, and operation of the Joint Property.

      Transportation cost of employees directly engaged on the Joint Property should be charged as a direct cost. Transportation cost for employees serving all properties in the operating area shall be allocated on the same basis as their salaries and wages. Transportation costs of transferred employees

**EXHIBIT E-2**
**PAGE 20 OF 40**