Brewster H. Jamieson, ASBA No. 8411122
Shannon W. Martin, ASBA No. 0105028
LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone: 907-277-9511
Facsimile:  907-276-2631
Email:      jamiesonb@lanepowell.com
Attorneys for Defendant

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| FOREST OIL CORPORATION,<br><br>                              Plaintiff,<br><br>v.<br><br>UNION OIL COMPANY OF CALIFORNIA<br>d/b/a UNOCAL ALASKA,<br><br>                              Defendant. | Case No. A05-0078 CV (JKS)<br><br>**DECLARATION OF<br>TIMOTHY C. BRANDENBURG** |

I, Timothy C. Brandenburg, declare as follows:

1.     I am employed by defendant Union Oil Company of California in the position of Drilling Manager.  This declaration is provided in reference to Union Oil's Motion for Partial Summary Judgment Re: Paragraph 22, Tool Rental.

2.     In my experience in the drilling industry in the Cook Inlet Basin, it is the practice for the drilling engineer and the drilling foreman to make the decisions as to what tools will be used and when to order the tools to be delivered.  Considerations that enter into that decision include: the cost and availability of the tool, lead time to secure the tool if available, transportation time and cost to bring the tool to the drill site, the cost of idling the rig and drilling operation if an item is overlooked because attention is diverted by drilling activities requiring immediate attention, possible acceleration of the project if things go better than planned, the insurance value of having tools on hand to meet unanticipated needs, and many other considerations some of which are unique to the individual drilling employee and drill site, such as the remote nature of the drill site and the weather.

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

3.     In conformity with this practice, Union Oil entrusts the drilling personnel in the Trading Bay Fields with the decision as to when to bring tools out and when to return them.  Further, to my knowledge, Union Oil has never communicated to its employees that it would be in the company's best interest to "warehouse" tools on a platform during drilling operations.  In fact, our performance evaluations of drilling engineers and foremen include cost per foot considerations.  Drilling personnel therefore have an incentive to manage all costs to provide efficient results.  Drilling projects are reviewed by drilling management to be sure that the involved employees have performed for the maximum benefit to the project objectives.  Efficient tool management is part of the drilling personnel's job, but is only one part of the overall balancing act of running the entire drilling operation in the most efficient way possible.  For instance, paying special attention to a low cost ($5 to $50 per day) tool so that it will be delivered or removed just in time is a poor use of the drilling foreman's time during an active drilling project costing $50,000 to $100,000 per day.

4.     Depending on current level's of drilling activity, outside vendors who rent the tools used on the Trading Bay Property drilling sites usually, as a matter of policy, base their rental charges on the days that the equipment is not in their possession.  This practice means that as soon as an item leaves the vendor's yard the charges begin; these charges do not stop until the item is returned to the vendor's yard.  By contrast, for "early order" items (*i.e.,* items delivered to the well site in advance of the commencement of drilling operations) Union Oil's practice is to not charge rental until installation of the blowout preventer stack on the wellhead; for items delivered during the job, charges begin only when the tool reaches the well site.  Charges for tool rental cease upon removal from the well site or removal of the blowout preventer from the wellhead, whichever first occurs.  Unlike some third party tool rental vendors, Unocal does not have established minimum rental periods nor does it charge premiums for short term use.  Consequently, Unocal's rental charges are at least consistent with, and in many instances more generous than the standard rental policies of third party tool rental vendors.

5.     Paragraph 22 of the complaint is based on Forest Oil's Audit Exception No. 6 (*see* Exhibit E-1 to the Declaration of Donald A. Page).  Audit Exception No. 6, by its own terms, pertains to drilling operations at Unocal's Monopod platform well A-15RD, pursuant to Authorization for Expense (AFE) 151723.  This was a $17 million project.  Those drilling operations

Declaration of Timothy C. Brandenburg
*Forest Oil Corporation v. Unocal Alaska* (Case No. A05-0078 CV (JKS))

**EXHIBIT F
PAGE 2 OF 7**

experienced several unanticipated problems and delays. The cost of the entire drilling program ran in the area of several thousand dollars per hour—adding up to anywhere from $50,000 to $100,000 dollars per day—and so any delays in the drilling program were extremely costly.

6.    Audit Exception No. 6 states in part:

A sample review found that the Operator was charging rentals at the start of drilling operations and most rentals did not stop until completion of drilling operations. Following is a sample of questionable items found on the Monopod AFE 151723 for the month of January, 2002:

The Audit Exception then lists five specific items for which there is an alleged overcharge for tool rental. Each specific item, and thus any allegation in the complaint based on that item, is without basis in fact for the following reasons:

(a)    Forest Oil's auditor wrote: "12 ¼" Breaker Bit charge for the entire month. Per the Drilling report 9 5/8" casing was run January 8, 2002 and charges should have stopped."

The referenced bit breaker is a very low cost item at $5/day ($20.8 cents per hour). The alleged over expenditure/over charge gross for the 12 ¼" Bit Breaker equals $110.

The following Unocal tools were on board the platform explicitly for the drilling of the 12 ¼" hole section:

| Tool Description | Serial No. | Off rental |
|---|---|---|
| Bit Breaker, 12-1/4" | 1272 | 1/31/02 |
| Rams, Set, Shaffer, 13-5/8" x 9-5/8" | 1310 A&B | 1/15/02 |
| Sub, Crossover, 4-1/2" IF Box x 6-5/8" Reg Pin | 1062 | 1/13/02 |
| Sub Bit, 6-5/8" Reg Box x Box | 1024 | 1/13/02 |
| Sub, Lift, 6-5/8" Reg | 2020 | 1/15/02 |
| Sub, Lift, 6-5/8" Reg | 1059 | 1/15/02 |
| Drill Collar, 8", 6-5/8" Reg Box x Pin | 3017 | 1/10/02 |
| Drill Collar, 8", 6-5/8" Reg Box x Pin | 2902 | 1/10/02 |
| Drill Collar, 8", 6-5/8" Reg Box x Pin | 2900 | 1/10/02 |
| Drill Collar, 8", 6-5/8" Reg Box x Pin | 2905 | 1/10/02 |
| Drill Collar, 8", 6-5/8" Reg Box x Pin | 2904 | 1/10/02 |
| Drill Collar, 8", 6-5/8" Reg Box x Pin | 2903 | 1/10/02 |

All items were off of rental by January 15 with the exception of the 12 ¼" Bit Breaker. As is demonstrated in the table above, the tools were removed from the location after their

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

service was completed and the rental ceased.  This clearly demonstrates that tools were not intentionally held on the facility to generate revenue.

The 12 ¼" Bit Breaker could have been sent in with the balance of the tools. However, it is a low priority item and when not in use is normally placed out of sight on the drill floor or other locations. It is not uncommon for a variety of bit breakers to be resident on a drilling rig throughout the drilling of a well.

Moreover, at the time referenced in the audit exception, the drill site was experiencing costly problems and delays.  In light of the drilling problems and the large amount of money being lost every hour because of the delays, it would not be a cost effective use of the drilling engineer's time to worry about the removal of this very low cost ($5/day) tool.

(b)    Forest Oil's auditor wrote: <u>"8 ½" Breaker Bit charged for the entire month of January.  Again 9 5/8" casing was not run until January 8, 2002 and bit would not be used until after that date."</u>

This breaker bit was also a $5/day (20.8 cents per hour) low cost tool.  The drilling of the 8 ½" hole commenced January 13.  Considering logistics and preparation for the next hole section, it is not unreasonable and it is expected that the supervision will have tools at the work site early to ensure that all equipment is in good repair and that all required tools are on location prior to the drilling of the next hole section.  In any case, as stated above, it is not uncommon for a variety of bit breakers to be resident on a drilling rig throughout the drilling of a well.  Therefore, the overcharge from the auditor's perspective would be that the tool was on location 8 days early.

Further, this item, as with all of the other items mentioned below, even though low cost, was essential to the drilling project; when this item was needed, it was needed immediately.  It would have been extremely cost prohibitive to stop the very expensive drilling operations in order to obtain and ship to the platform a $5/day tool every time it was needed.  It was far more cost effective to keep the item on the platform, even when it was not being used, so that it would be handy when necessary.

Calculating the "overcharge" at 8 days x $5/day rental = $40 gross alleged overcharge for the 8 ½" bit breaker.

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Declaration of Timothy C. Brandenburg**
*Forest Oil Corporation v. Unocal Alaska* (Case No. A05-0078 CV (JKS))

**EXHIBIT F**
**PAGE 4 OF 7**

(c)    Forest Oil's auditor wrote: <u>"3 ½" and 4 ½" Rams charged for the entire month.</u> <u>Per the Drilling Report 4 ½" casing was not run until March 21, 2002 and 3 ½" and 4 ½" tubing was</u> <u>run March 23, 2002."</u>

The rams in dispute belonged to the Trading Bay Unit and so, both the charges <u>and</u> <u>dollar-for-dollar off-set credits for the charges</u> went to the Trading Bay Unit.  Thus, the net Unit cost (to Forest Oil) was zero for the rams.  The auditor has taken exception to the charge, but has ignored the fact that an equal, off-setting credit was also passed on.  The exception regarding the rams is groundless because the net cost to Forest Oil was zero.

In addition, as these tools are for Well Control, it is not uncommon for Unocal Drilling to maintain a set of rams for all potential drill string/tubing sizes to be used on a well. Typically these included 2-7/8", 3-1/2", 4-1/2" and 5" rams.   Often the rams in this size range are indeed stored at the rig site as opposed to being shipped back and forth from the platform to the beach multiple times during the drilling of one well.   It should be noted that other rams are managed more closely as is demonstrated by the above response to Exception One, which shows that a larger set of rams (in that case the 9-5/8" rams) which clearly had no future utility, were returned to the beach after the 9-5/8" casing was run.

The auditor also ignored that 3 ½" drill pipe on which the rams were used was used throughout the month of March.  A prudent driller would have these tools on hand before needed, and the unanticipated lost time cited several times above could not have been anticipated.

(d)    Forest Oil's auditor wrote: <u>"3 ½" and 4 ½" Sub Box X Pin charged for the</u> <u>entire month.  Per the Drilling Report 4 ½" casing was not run until March 21, 2002 and 3 ½" and 4</u> <u>½" tubing was run March 23, 2002."</u>

The following subs were on location the entire month of January.  It must be noted that none of the subs below are associated with running the 4-1/2" casing as is alleged in the auditor's exception.

**Subs on Monopod for the entire Month of January**

| Tool Description (Not including BOPE associated Subs) | Serial No. | Rental Rate/day |
|---|---|---|
| Sub, Crossover, 4-1/2" Reg Box x 4-1/2" IF Box | 1277 | $8.80 |

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

Declaration of Timothy C. Brandenburg
*Forest Oil Corporation v. Unocal Alaska (Case No. A05-0078 CV (JKS))*

**EXHIBIT F**
**PAGE 5 OF 7**

| Sub, 3-1/2" Buttress Box x 3-1/2" IF Pin | 1178 | $8.80 |
| Sub, Pump In, 4-1/2" IF x 2" NPT | 1061 | $14.40 |

Crossover subs serve a number of purposes, including but not limited to:

- To mate different drill string sizes and connection (thread) types
- To mate drilling tools of different sizes and connection (thread) types
- To allow the "Safety valve" to be installed on the drill string
- To handle drill pipe and drill collars
- To mate hoses to the drill string at surface

The gross alleged overcharge for the subs = $992 (31 days x $32/day total rental for all of the above-listed subs).

Given their specialized role (i.e. mating two pieces of pipe with different threads and or sizes), it is a common and prudent practice (especially on remote locations) to have an assortment of crossover subs available in order to deal with any unexpected or unplanned events. In many cases redundant crossovers are available in the event that one should be damaged. It is entirely possible to shut down an entire drilling operation, which may be operating at a cost of $50,000 to $100,000 dollars per day, simply because the necessary crossover, which may cost $8.80 per day, is not available on the rig. The fact that the tools listed above remained on the platform for the month is not by any means excessive or inappropriate given the nature of the work being performed.

Moreover, the auditor again overlooked the fact, as mentioned above, that the 3 ½" drill pipe was used throughout the entire month. The 3 ½" subs in this item could potentially have been needed in connection with the drill sting. A prudent driller would have had all of these subs on hand in the event they were needed.

(e)     Forest Oil's auditor wrote: "Valve, Lower Kelly, Box X Pin charged for the entire month. Per the Drilling Report 4 ½" casing was not run until March 21, 2002 and 3 ½" and 4 ½" tubing was run March 23, 2002."

The total rental charge for this tool in January 2002 was $1,395 (rental at $45/day for a total of 31 days).

The "Lower Kelly Valve" was being used as a "Floor Safety Valve" for the 5" drill string that was in use during the month of January. Such a valve is required by Alaska Law (20 AAC 25.035) to be available on the rig floor at all times for each pipe size in use so as to allow for

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

Declaration of Timothy C. Brandenburg
*Forest Oil Corporation v. Unocal Alaska (Case No. A05-0078 CV (JKS))*

securing the drill string. 5" Drill Pipe with 4-1/2" IF Connections was utilized for the drilling of all hole sections (12-1/4", 8-1/2" and 6") and as such, a Floor Safety Valve was required by law for essentially the entire project. Because this tool was required by law to be on site, it was "in use" for the entire month of January 2002 and Forest Oil's exception is without merit.

7.    Unocal thus rejected Forest Oil's claims regarding the five specific items discussed above, on the grounds that the claims were based on: (1) erroneous statements and factual assumptions; (2) false expectations that drilling personnel can perfectly predict tool needs; (3) a faulty concept as to how tool rental companies charge for their rentals; and (4) an uninformed view of operating conditions during a drilling projects.

8.    The total alleged gross "overcharge" for all of the items listed by Forest Oil in its Audit Exception No. 6 equals $2,537 (12 ¼" Bit Breaker = $110; 8 ½" Bit Breaker = $40; 3 ½" and 4 ½" Rams = zero; 3 ½" and 4 ½" Subs = $992; Lower Kelly Valve = $1,395).

9.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Timothy Brandenburg

I certify that on March _____, 2006, a copy
of the foregoing was served by mail on:

Kyle W. Parker, Esq.
David J. Mayberry, Esq.
Patton Boggs LLP
601 West Fifth Avenue, Suite 700
Anchorage, Alaska 99501-6305

Nanci L. Biggerstaff, CPS, PLS
017351.0040/152546.1

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

**Declaration of Timothy C. Brandenburg**
*Forest Oil Corporation v. Unocal Alaska* (Case No. A05-0078 CV (JKS))

**EXHIBIT F**
**PAGE 7 OF 7**