Brewster H. Jamieson, ASBA No. 8411122
Shannon W. Martin, ASBA No. 0105028
LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone: 907-277-9511
Facsimile:  907-276-2631
Email:       jamiesonb@lanepowell.com
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

FOREST OIL CORPORATION,

                Plaintiff,

v.

UNION OIL COMPANY OF CALIFORNIA
d/b/a UNION OIL ALASKA,

                Defendant.

Case No. 3:05-cv-00078-RRB

**REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE: PARAGRAPH 22, TOOL RENTAL**

        Defendant Union Oil Company of California (Union Oil), by and through counsel, hereby replies to plaintiff Forest Oil's opposition to Union Oil's motion for an order granting partial summary judgment on the claims contained in paragraph 22 of the Complaint [Docket 1] regarding "charges for the rental of equipment owned by" Union Oil.

        In spite of the fact that this lawsuit has been pending for over one year, and that Forest Oil was provided ample opportunity to oppose this motion, Forest Oil has failed to put forward any evidence that Union Oil violated any contractual provision, law or industry practice related to the charges for tool rentals. Therefore, for the reasons stated in the motion and below, the court is respectfully requested to grant the motion in its entirety.

        **1.**    **Forest Oil Has Effectively Conceded All Of The Facts Necessary To Establish That Union Oil Did Not Act Impudently Regarding The Tool Rental Charges**.

        Under F.R.C.P. 56(e), to defeat Union Oil's summary judgment motion Forest Oil has the burden to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996) (noting that the non-moving party must 'identify with reasonable particularity the evidence that precludes summary judgment'). *And see* 10B Wright, Miller & Kane *Federal Practice and Procedure: Civil 3d* (1998) at § 2738, p. 345 ("It must be remembered that when the moving party presents admissible evidence justifying a summary judgment if uncontradicted, the opposing party has the duty to show the existence of a genuine issue of material fact."); and *id.* at § 2739. Because Union Oil supported its motion by affidavits and other evidence, F.R.C.P. 56(e) requires that Forest Oil do likewise or summary judgment, if appropriate, will be entered against it. *See Far Out Productions, Inc. v. Oskar*, 247 F.3d 986. 997 (9th Cir. 2001) (If the non-moving party fails to make a showing of "specific facts" under Rule 56(e), "the moving party is entitled to judgment as a matter of law.").

However, despite having ample opportunity to file its opposition, Forest Oil has not submitted with its opposition even a scintilla of evidence in opposition to the motion. Forest Oil has completely failed to submit any documentary evidence or affidavit which counters any of the evidence or affidavits submitted by Union Oil with the motion, or which sets forth any "specific fact" which creates a genuine issue for trial. In particular, none of the factual statements in the declarations of Timothy C. Brandenburg and Donald A. Page submitted with the motion have been contested or contradicted by Forest Oil. Nor has Forest Oil countered many of the legal arguments made by Union Oil.

D.Ak. LR 7.1(d)(1) provides:

Failure to include proper materials in support of, **or in opposition to**, a motion as required by this rule subjects the motion to summary ruling by the court.

(1) If the failure is by the moving party, it may be deemed an admission that the motion is without merit, and, **if by the opposing party, that the motion is well taken**. (emphasis added)

As such, as will be discussed in more detail below, Forest Oil must be deemed to have effectively conceded the facts and legal arguments made by Union Oil in its motion which establish that Union Oil is entitled to summary judgment as a matter of law on the tool rental charge allegations.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Reply To Motion For Partial Summary Judgment Re: Paragraph 22, Tool Rental**
*Forest Oil Corporation v. Union Oil Alaska* (Case No. 3:05-cv-00078-RRB)         Page 2 of 12

### 2. Forest Oil Seeks To Improperly Limit The Motion To 2002 Tool Rental Charges.

In arguing that Union Oil's discussion regarding Audit Exception No. 6 is misplaced, Forest Oil writes:

> The 2002 Audit Exception itself is for *an amount yet to be determined* (TDB), and the five "questionable items" found on one well for one month were obviously cited as an example and not intended to define the aggregate overcharged tool rental amount for the year. Nor can these five "questionable items," cited only as an example in the 2002 Audit Exception and not even mentioned in the Complaint, *define the universe of wasteful and improper tool rental overcharging that Forest intends to present at trial* in support of its claims of Union Oil's imprudent operations.

Opposition, p. 4 (emphasis added). Forest Oil is, in essence, making two related arguments: (1) that Union Oil's motion only applies to the five equipment items in Audit Exception No. 6; and (2) summary judgment cannot be given on any alleged tool rental overcharge because Forest Oil has a suspicion, based on no facts whatever, that there might just possibly have been other overcharges on other projects at other times. These arguments cannot defeat summary judgment and must be rejected.

First, Forest Oil's position is apparently that the specific tool rental allegations in the complaint—which are the only specific allegations of tool rental overcharges which have been made by Forest Oil in this litigation—are merely "examples of an example;" that is, the tools mentioned in Audit Exception No. 6 are examples of the tool rental allegations which are themselves merely examples of Union Oil's allegedly imprudent operations. But Forest Oil's attempt to narrow the motion at most to the 2002 tool rental charges mentioned in Audit Exception No. 6 is misguided. Union Oil moved for summary judgment not only on the specific examples in Paragraph 22, but on *all* claims of tool rental charges which could be made by Forest Oil. Union Oil's motion went into considerable detail concerning its general practices, procedures, philosophy and justification for its tool rental charges. Union Oil has demonstrated that, as a matter of law, no tool rental overcharge claim which could be made by Forest Oil is triable.

When Union Oil discussed specific dollar amounts and specific tools in the motion it addressed only those items in Audit Exception No. 6 because *Forest Oil has identified no other*

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

*examples of supposedly inappropriate tool rental charges.* Having failed to even attempt to rebut Union Oil's discussion which shows that the specific items identified in the complaint are baseless, Forest Oil is now arguing in essence "just because the tool rental claims we have made are baseless doesn't mean that there are no other tool rental claims we might make." This, however, is not an argument that can defeat summary judgment.

As part of addressing the specific items in Audit Exception No. 6 Union Oil described in the motion the following principles and practices which go into Union Oil's calculation of tool rental charges (Forest Oil has not contested that these principles and practices exist and are followed by Union Oil):

- It is the practice of third-party vendors who rent the tools used on the drilling sites to charge rental as soon as the tool leaves the vendor's yard and continue until the item is returned to the vendor's yard. Declaration of Tim Brandenburg at ¶ 4 (submitted with the motion).

- Union Oil's tool rental practice is in many instances more generous than third-party vendors: For "early order" items (*i.e.,* items delivered to the well site in advance of the commencement of drilling operations) Union Oil's practice is to not charge rental until installation of the blowout preventer stack on the wellhead; for items delivered during the job, charges begin only when the tool reaches the well site; Union Oil's charges for tool rental cease upon removal from the well site or removal of the blowout preventer form the well head, whichever occurs first. *Id.*

- If a TBU-owned tool is sent to a drilling site in the Trading Bay Unit, the Joint Account is charged for its rental just like any other type of tool. However, because the Working Interest Owners own the tool, each owner's account is credited its share of the rental fee, resulting in a wash transaction. Declaration of Donald A. Page at ¶¶ 5-8 (submitted with the motion).

- Where Union Oil-owned tools are used on TBU projects, the Joint Account is charged the full rental price, resulting in a charge to each owner for its percentage of the rental. *Id*. at ¶¶ 4-5.

- By the express terms of Section 7 of the COPAS Procedures, which are incorporated into the Operating Agreements, Unocal could have chosen either Paragraphs 7A or 7B by which to account for tool rental. *Id.* at ¶ 9. Unocal chose to use the methods in Paragraph 7B for the 2002 tool rental charges. *Id.*

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

- Rental charges made to the Joint Account for tools owed by Unocal were made in full compliance and conformity with the provisions of paragraph 7B of the COPAS Procedures. *Id.*

As is clear in the motion, these uncontested practices are uniformly applied by Union Oil to tool rental charges in general. As such, these practices apply to all of the tool rental charge claims Forest Oil may make. Forest Oil has no grounds to artificially limit the motion just to the five items in Audit Exception No. 6 because, contrary to how Forest Oil would have it, nowhere in the motion did Union Oil limit the applicability of these practices solely to Audit Exception No. 6. If Forest Oil believes that there are some tool rental charges to which these practices are not applicable or were not applied by Union Oil, it was Forest Oil's duty in opposing the summary judgment motion to specifically identify those tool rental charges and explain why summary judgment should not be granted on those specific charges. Forest Oil completely failed to do that; nowhere in the opposition is any evidence of any specific tool rental overcharge alleged by Forest Oil. Therefore, because these uncontested tool rental practices apply to all tool rental charges (and there is no evidence to the contrary), they support dismissing <u>all</u> of Forest Oil's tool rental claims as a matter of law.

Second, Forest Oil's claim that it will present evidence at trial of other tool rental overcharges should be rejected. Rule 56(e) provides that a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading," but must put forth specific facts showing a genuine issue for trial. It states in *Federal Practice and Procedure*, *supra*, § 2739:

> ...the party opposing the summary-judgment motion does not have the right to withhold evidence until trial; nor can the opposing party demand a trial because of the speculative possibility that a material issue of fact may appear at that time.

Forest Oil thus cannot defeat summary judgment merely by claiming it has unspecified claims of unspecified rental charges for unspecified tools at unspecified times. Forest Oil says that it has examples of tool rental overcharges in 2002 other than those stated in Audit Exception No. 6, but it puts forward no evidence of any such charges. Forest Oil also claims tool rental overcharges in other years, but again puts forward no evidence in support. Forest Oil is not allowed to keep evidence of other tool rental overcharges a secret and instead make unsupported claims in the opposition that such overcharges exist. *See Bras v. California Public Utilities Com'n*, 59 F.3d 869, 872 (9th Cir.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

1995) ("In order to defeat a summary judgment motion, the nonmoving party may not simply rely on his pleading but must present some evidence on every material issue for which he will bear the burden of proof at trial."); *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."); *Smith v. Mack Trucks,* 505 F.2d 1248, 1249 (9th Cir. 1974) ("the arguments and statements of counsel 'are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment'"). Instead, in order to defeat summary judgment it was Forest Oil's duty to come forward with competent, admissible evidence of other tool rental overcharge claims. Forest Oil has failed to do so, and so has not shown why summary judgment should not be granted.

### 3. There Are No Genuine Issues Of Material Fact: All Of The Tool Rental Allegations Should Be Dismissed As A Matter Of Law.

Paragraph 22 combines two claims regarding tool rental charge. The first claim is that in 2002 Union Oil charged the Joint Account $1 million for rental for tools owned by Union Oil:

> For example, in 2002 alone, Union Oil charged to the Properties joint account over $1 million for the rental of Union Oil-owned equipment. Review of these charges disclosed that Union Oil frequently was charging a daily rental for equipment beginning at the start of drilling operations and continuing until completion of the drilling operations. Prudent operations would require the operator to bill for only the actual operating time the equipment was used and not the full time period the well was being drilled. Union Oil's wasteful and improper charges for the rental of equipment owned by Union Oil itself provides another example of Union Oil's imprudent operatorship.

Forest Oil has effectively conceded that this claim is groundless. Forest Oil has not contested the following facts in the motion:

- The COPAS Procedures adopted by the Operating Agreements allowed Union Oil to use the prevailing commercial methodology for tool rental charges in the Cook Inlet area. (Page Dec. at ¶ 9).

- The prevailing commercial practice in the Cook Inlet area for third-party vendors is that the charge for a tool begins from the time it leaves the yard and does not stop until the time it is returned to the yard (Brandenburg Dec. at ¶ 4);

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

- Union Oil's tool rental charges are at least consistent with, and in many instances more generous than the standard rental policies of third party tool rental vendors (*id.*).

- Unlike nearly all third-party vendors, Union Oil has neither established minimum rental periods nor instituted premiums for short-term use (*id.*).

- Union Oil complied with the COPAS Procedures by calculating the tool rental charge at the "average commercial rate" in the area of the Trading Bay Properties, less a discount of 20% (Page Dec. at ¶ 9).

- The total alleged gross overcharge for tool rental in Audit Exception No. 6 was only $2,537 (Brandenburg Dec. at ¶ 8).

Forest Oil has also not contested Union Oil's argument that, because it complied with paragraph 7B of the COPAS Procedures, Union Oil's calculation of the tool rental charges did not breach the Operating Agreements and was not imprudent. These uncontested facts and argument demonstrate as a matter of law that Union Oil's tool rental charges were not a breach of contract or "willful," "improper," or "imprudent" as Forest Oil alleges, and Forest Oil has put forward no evidence or argument to the contrary.

The second claim in Paragraph 22 is that Union Oil charged for keeping tools at the drilling site when they were not being used:

> Union Oil's "warehousing" of idle rental equipment at an operating site and charging daily rental rates during the period of non-use appears to be solely for Union Oil's benefit of improving utilization time for Union Oil-owned equipment, at the expense of Forest.

Forest Oil has also effectively conceded that this claim is groundless. Forest Oil has not contested the following facts in the motion:

- It is the established practice of the drilling industry in general, and Union Oil in particular, to allow the on-site drilling personnel the discretion—taking a variety of factors into consideration, including the cost of the tool and the cost and status of the drilling operation—in deciding what tools to use, when to order the tools delivered to the site, and when to have those tools removed (Brandenburg Dec. at ¶¶ 2-3).

- It is Union Oil's established practice to give drilling personnel the incentive to manage the costs of the drilling operations to maximize efficiency and the project objectives (*id.* at ¶ 3).

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

- Efficient tool management is part of the drilling personnel's job in the overall balancing act of running the entire drilling operation in the most efficient way possible (*id.*).

- It would have been an extremely unproductive use of the Drill Site Manager or Drilling Foreman's time to worry about removing very low cost tool which rents at $5 or $50 per day from the platform whenever they were not needed (*id.*).

Forest Oil has also not contested Union Oil's arguments that (1) it would have been extremely cost prohibitive to stop the very expensive drilling project whenever such low cost tools were needed and wait until they were ordered from the shop and delivered to the site; (2) it was far more cost effective to have these low cost tools on hand at the drill site so that they could be used when needed; and (3) allowing drilling personnel the discretion to keep such tools on site is an overall benefit to the efficient and economic operation of the drilling program, and thus benefits Forest Oil as a part-owner of the TBU.  Forest Oil also has not contested that Union Oil's practice did not depart from industry practice in allowing the drilling personnel the discretion in delivering, using and removing tools from the drill site, that Union Oil was prudent in this practice, and that the decisions made by its drilling personnel were logical and prudent.

Because Forest Oil has put forward no evidence to support the second part of its tool rental claim, summary judgment should be granted to Union Oil on this claim.

Finally, Forest Oil writes in its opposition that "[i]t remains a genuine dispute as to material fact whether Union Oil's tool rental charges were consistent with Union Oil's contractual obligations." Opposition, p. 5.  However, there can be no genuine dispute because Forest Oil has put forward no evidence or affidavit testimony whatsoever creating any such dispute.  The above facts, which Forest Oil does not contest, are sufficient in themselves to show that Union Oil met its contractual obligations under the Operating Agreements by complying with the COPAS Procedures regarding the tool rental charges.  Because Forest Oil has put forward no evidence to support the first part of its tool rental claim, summary judgment should be granted to Union Oil on this claim.

### 4. The Exculpatory Clauses Support Granting Summary Judgment.

Forest Oil has effectively conceded all of the facts which demonstrate, as a matter of law, that Union Oil did not breach the Operating Agreements.  However, Forest Oil argues that there is a material fact as to whether the tool rental charges breached the contracts because, as Forest Oil

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Reply To Motion For Partial Summary Judgment Re: Paragraph 22, Tool Rental**
*Forest Oil Corporation v. Union Oil Alaska* (Case No. 3:05-cv-00078-RRB)   Page 8 of 12

claims, the tool rental charges were an administrative and accounting function to which the "gross negligence/willful misconduct" standard in the contractual exculpatory clauses did not apply. This argument should be rejected by the Court for two reasons: (1) whether the exculpatory clauses apply is ultimately irrelevant to the breach of contract/imprudence claims made by Forest Oil; and (2) the fact is that the exculpatory clauses do apply to the operational decisions by Union Oil regarding tool rentals.

      **(a)**    <u>**Whether The Exculpatory Clauses Apply Is Irrelevant.**</u>

To begin with, the application of the gross negligence/willful misconduct standard in the exculpatory clauses is irrelevant. Union Oil does not have to rely on the exculpatory clauses to show that the tool rental charges did not breach the Operating Agreements and were not the result of Union Oil's imprudence. Whether the tool rental charges breached the Operating Agreements and were imprudent is an issue which is independent of the application of the exculpatory clauses. That is, all that is necessary for Union Oil to prevail in the motion is to show, as it has, that its conduct regarding the tool rentals was not a breach of contract and was not imprudent; it is not necessary for Union Oil to also show that its conduct did not violate the gross negligence/willful misconduct standard in the exculpatory clauses. Even if it is assumed that the exculpatory clauses do not apply, for the reasons stated in the motion and herein Union Oil is entitled to summary judgment because it has amply demonstrated through the uncontested facts, and as a matter of law, that the tool rental charges did not breach the Operating Agreements and so were not imprudent acts by Union Oil.

      **(b)**    <u>**The Exculpatory Clauses Apply Because The Tool Rental Allegations Concern Operational Decisions.**</u>

In addition to being irrelevant, Forest Oil's argument about the application of the exculpatory clauses is incorrect. It is undisputed that the gross negligence/willful misconduct standard in the exculpatory clauses applies to operational acts and decisions. *See* Order Denying Defendant's Motion for Partial Summary Judgment and Granting Plaintiff's Cross-Motion (Docket No. 70), pp. 9-10. The exculpatory clauses apply in this matter because, at their essence, the allegations about the tool rental charges do not concern administrative or accounting matters, as argued by Forest Oil, but are directed to operational decisions.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

The basis of the allegations in Paragraph 22 is that Union Oil keeps tools at the well site too long and that this results in an overcharge for tool rental. As discussed below, decisions regarding the handling of tools at the well site are operational decisions. That such operational decisions may result in an alleged overcharge does not transform such operational decisions—to which the gross negligence/willful misconduct standard applies—into an accounting matter to which the standard does not apply. Almost every allegedly "bad" operational decision causes a party to lose some money or pay increased expenses. If Forest Oil's position were adopted by this Court, any aggrieved party under an Operating Agreement in virtually every case could take the exculpatory clause out of play simply by alleging that the increased expenses or monetary loss were accounting matters. However, the exculpatory clause should not be rendered a nullity by such semantic games; instead, the Court should base its determination of whether accounting or operational matters are at issue on a realistic appraisal of the essence of the allegations. In this case, the alleged tool rental overcharges are not the cause of Forest Oil's alleged damages, but the result of the allegedly bad decisions Union Oil made regarding handling tools at the drill site. Forest Oil's tool rental allegations are premised on those allegedly bad decisions. Therefore, those allegations at their heart concern operational decisions to which the gross negligence/willful misconduct standard applies.

**(c)** **The Undisputed Facts Show That The Tool Rental Allegations Relate To Operational Decisions.**

The Court held in its Order Denying Defendant's Motion for Partial Summary Judgment and Granting Plaintiff's Cross-Motion (Docket No. 70), at p. 10, that the gross negligence/willful misconduct standard only applies to "operations," and not to "specific and express contractual duties." There is no specific and express contractual duty in the Operating Agreements regarding whether and how long a particular tool should be kept at the well site.

As was discussed above, Forest Oil has not contested that it is the established practice of the drilling industry and Union Oil to allow the on-site drilling personnel the discretion to decide what tools to use, when to order the tools delivered to the site, and when to have those tools removed in order to maximize efficiency and the objectives of the overall project. Forest Oil has not contested that various factors go into this decision, including the cost of the tool and the cost and status of the drilling operation. Forest Oil has not contested that it would have been an extremely unproductive

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

and cost-prohibitive to remove such very low cost tools from the well-site whenever they were not needed, or to stop the very expensive drilling project whenever such low cost tools were needed and wait until they were ordered from the shop and delivered to the site. The discretionary decisions and multi-factored analysis which go into the handling of rented tools is the very definition of an "operational" decision to which the gross negligence/willful misconduct standard applies.

Finally, Forest Oil has not contested that, because of the discretion allowed to drilling personnel to maximize the efficiency of the drilling project, it was not gross negligence or willful misconduct for Union Oil's personnel to decide to keep low cost tools at the well site and available for immediate use when they were needed.

Therefore, although Union Oil would be entitled to summary judgment in any event because the tool rental charges did not breach any contractual obligations, Forest Oil's tool rental claims are also barred as a matter of law by the gross negligence/willful misconduct standard in the exculpatory clauses.

**5.     The Tool Rental Claim Is Subject To Summary Judgment.**

Forest Oil argues that its tool rental claim is not subject to summary disposition because it is a "non-claim," and because Union Oil did not seek summary judgment on any of Forest Oil's four causes of action. Opposition, p. 3. This argument cannot stand in light of F.R.C.P. 56(b), which states in relevant part:

> A party against whom a *claim*, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or *any part thereof*. (emphasis added)

Even if it is assumed for the sake of argument that the tool rental allegations are not a discrete claim, Union Oil's motion is directed to the tool rental charges "part" of the overall breach of contract and equitable relief causes of action asserted in the complaint. Limiting the motion to "any part" of those causes of action is expressly allowed by Rule 56(b).

However, the fact is that the tool rental allegations are a claim. "Claim" is defined as, in part: "The assertion of an existing right; any right to payment or to an equitable remedy." Black's Law Dictionary, p. 264 (8th Ed.). It is plain by the language of the complaint that the tool rental charge allegations are in fact a "claim." Paragraph 22 alleges, at its essence, that Union Oil breached

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

the Operating Agreements by charging Forest Oil more for tool rental charges than Forest Oil thinks was prudent. Forest Oil alleges in Paragraph 25 that Union Oil's imprudent operations, which allegedly includes the tool rental charges, damaged Forest Oil, "the precise amount to be determined at trial." The prayer for relief seeks "damages caused by Union Oil's breaches" of the Operating Agreements. Clearly, Forest Oil is alleging that the tool rental charges are an element of the monetary damages allegedly suffered by it, and seeks to recover at trial an award of any alleged tool rental overcharges. The tool rental allegations could have stood alone as an independent cause of action, should Forest Oil have chosen to do so. This meets the definition of a "claim."

Further, Forest Oil itself argues that Paragraph 22 is "incorporated into the other three claims in the Complaint and is an example of Union Oil's conduct" in Count II for equitable relief, and Count IV for breach of contract. Opposition, p. 3. This again shows that Forest Oil is asserting the tool rental allegations as a "claim," that is, a right to payment for the alleged breach of contract and as a right to equitable relief.

## **CONCLUSION**

Forest Oil has put forward no evidence creating any genuine issue of material fact. Therefore, for the reasons stated above and in the motion, Union Oil respectfully requests that the court dismiss as a matter of law all allegations in the complaint relating to tool rental charges.

DATED this 5th day of July, 2006.

                LANE POWELL LLC
                Attorneys for Defendant


                By   s/ Brewster H. Jamieson
                    Brewster H. Jamieson, ASBA No. 8411122
                    301 West Northern Lights Boulevard, Suite 301
                    Anchorage, Alaska  99503-2648
                    Tel:   907-277-9511
                    Fax:   907-276-2631
                    Email:  jamiesonb@lanepowell.com

I certify that on July 5, 2006, a copy of the foregoing was served by ECF on:

Jeffrey M. Feldman, feldman@frozenlaw.com

  s/ Brewster H. Jamieson
017351.0040/155578.1

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Reply To Motion For Partial Summary Judgment Re: Paragraph 22, Tool Rental**
*Forest Oil Corporation v. Union Oil Alaska* (Case No. 3:05-cv-00078-RRB)      **Page 12 of 12**