IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

FOREST OIL CORPORATION,

    Plaintiff,

   vs.

UNION OIL COMPANY OF
CALIFORNIA d/b/a UNOCAL
ALASKA,

    Defendant.

Case No. 3:05-cv-00078-RRB

**ORDER DENYING MOTION FOR
PARTIAL SUMMARY JUDGMENT AT
DOCKET NO. 20 and DISMISSING THE
COUNTERCLAIM FOR EQUITABLE RELIEF**

I. **INTRODUCTION.**

   Defendant Union Oil Company of California ("Unocal")
moves for partial summary judgment on its counterclaim relating to
the King Salmon Buss project.[1]  Unocal argues that it is entitled
to recover damages under the doctrines of *quantum meruit* and/or
unjust enrichment, with the amount of recovery to be determined in
later proceedings.[2]  Plaintiff Forest Oil Corporation ("Forest")
disagrees and opposes the motion.[3]  Neither party has requested
oral argument and the Court has determined that oral argument would

---

[1] Clerk's Docket No. 20.

[2] *Id.*

[3] Clerk's Docket No. 33.

not assist the court in resolving the motion.  Because the Court concludes that Unocal has an adequate remedy at law and is, therefore, not entitled to equitable relief, Unocal's Motion for partial summary judgment is **DENIED** and the counterclaim for equitable relief in the nature of *quantum meruit* and/or unjust enrichment is **DISMISSED**.

## II.  FACTS.

Forest and Unocal own working interests in several offshore oil and gas leases located in Alaska's Cook Inlet.[4]  These interests comprise the Trading Bay Properties.[5]  There are four agreements that govern the relationship between Forest and Unocal regarding the development and operation of the Trading Bay Properties.  These agreements are:

    1.   The Trading Bay Unit Operating Agreement ("TBUOA").[6]

    2.   The Trading Bay Field Operating Agreement ("TBFOA").[7]

    3.   The Unit Agreement for the Development and Operation of the Trading Bay Unit, State of Alaska ("TB Unit Agreement").[8]

---

[4]  Clerk's Docket No. 18 at 3.

[5]  Id.  Unocal and Forest are the sole working interest owners of the oil assets underlying the Trading Bay Properties.  Id. at 4.

[6]  Clerk's Docket No. 23 at Ex. A.

[7]  Id. at Ex. B.

[8]  Id. at Ex. C.

4.    The Alignment Agreement Trading Bay Field/Trading
      Bay Unit.[9]

Unocal is the Operator under these agreements.

Unocal owns the King Salmon Platform in Cook Inlet.  In May 2001 the King Salmon Platform was powered by two Ruston generators connected to a 480V Power Distribution Buss.  Unocal determined that the 480V Power Distribution Buss system was not rated to safely handle the platform's electrical load.[10]  In September 2001 Unocal submitted an Authorization for Expense ("AFE") to remedy these defects for Forest's consideration and approval.[11]  Forest approved the AFE and the project was about 50% complete before the errors were discovered.[12]  The project was cancelled in October 2002.[13]

Unocal then developed a design with Arctic Sun engineering to reconfigure the electrical system so that the platform's electrical needs could be met by a single Solar gas turbine generator rather than needing to use the two Ruston generators.[14]  A Design Review confirmed that the design was sound,

---

[9]   Id. at Ex. A. for Tabler Declaration.

[10]  Clerk's Docket No. 20 at Decl. Hinks at ¶ 2.

[11]  Id. at ¶ 3.

[12]  Id.

[13]  Id.

[14]  Id. at ¶ 5.

it addressed the safety issues, and provided economic benefits to the platform.[15]   In December 2004 Unocal's Production Engineer (Hinks) met with employees of Forest to discuss the proposed project.[16]   On December 29, 2004, Forest sent a letter to Unocal agreeing "in principal that a correction needs to be made." However, Forest had a few problems with the design and suggested that a mutually agreeable third party examine the project to determine if the Arctic Sun Engineering design is preferable or if there was a more cost effective solution.[17]   In January 2005 Unocal and Forest met again to discuss the cost of the project, at which Forest outlined some alternative designs for Unocal to consider in order to potentially save costs and requested that a third party electrical engineer examine all the options.[18]   Unocal agreed to the third party review by David Cannon, P.E.[19]

       In his review David Cannon concluded that the Arctic Sun design was sound and that the other alternatives were not viable.[20] Hinks then met with Forest to advise Forest that he thought it was

---

[15]   Id.

[16]   Id. at ¶ 7.

[17]   Clerk's Docket No. 20 at Ex. D.

[18]   Id. at Decl. Hinks at ¶ 7.

[19]   Id. at Ex. E.

[20]   Id. at Ex. F.

prudent to go forward with the Arctic Sun design.[21]  On February 3, 2005, Forest sent Unocal a letter disapproving the AFE.[22]  Forest stated that while it agreed in principal with the project, it felt that the solution was over designed, the information supplied was inaccurate, and Unocal pre-ordered equipment before the AFE was approved.[23]  Unocal responded in a letter that addressed each objection in detail.[24]  Multiple letters between Forest and Unocal were exchanged concerning Forests' objections to the project.[25]

On April 14, 2005, Forest filed this lawsuit.

Because Forest did not approve the project, Unocal instructed Hinks to prepare an AFE for Unocal to complete the project on its own.[26]  On April 19, 2005, Hinks prepared an AFE, which revised the cost of the project to $989,189.[27]  Unocal approved the AFE on April 18, 2005.[28]  The project is complete.[29]

---

[21]  Id. at Decl. Hinks at ¶ 9.

[22]  Id. at Ex. G.

[23]  Id.

[24]  Id. at Ex. H.

[25]  Id. at Decl. Hinks at ¶ 11.

[26]  Id. at ¶ 14.

[27]  Id. at Ex. J.

[28]  Id.

[29]  Id. at Decl. Hinks at ¶ 15.

Unocal filed this motion in order to recover from Forest under the doctrines of *quantum meruit* and/or unjust enrichment, with the exact amount of recovery to be determined at a later date.[30]

## III.  STANDARD OF REVIEW

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the moving party is entitled to judgment in its favor as a matter of law.[31] "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment."[32] In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial.[33] The issue of material fact required to be present to entitle a party to proceed to trial

---

[30]    See FED. R. CIV. P. 56(c) ("A summary judgment, interlocutory in nature, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.").

[31]    FED. R. CIV. P. 56(c); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc); Taylor v. List, 880 F.2d 1040, 1044 (9th Cir. 1989).

[32]    Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 255 (1986).

[33]    FED. R. CIV. P. 56(e); Henderson v. City of Simi Valley, 305 F.3d 1052, 1055-56 (9th Cir. 2002).

is not required to be resolved conclusively in favor of the party asserting its existence; all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a fact-finder to resolve the parties' differing versions of the truth at trial.   There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.[34]

## IV.  DISCUSSION

Unjust enrichment and *quantum meruit* are both judicially created quasi-contract equitable remedies that are essentially treated as the same.[35]  A fundamental tenet of equity jurisprudence is that one seeking equitable relief must show that either there is no remedy at law or that the remedy at law is inadequate.[36]  In this case, Unocal has an adequate remedy at law: its breach of contract claim.   It is well settled in Alaska that an implied contract theory can not be relied on when an express contract covers the same subject matter.[37]

---

[34]  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

[35]  Reeves v. Alyeska Pipeline Service Co., 56 P.3d 660, 667 (Alaska 2002); Old Harbor Native Corp. v. Afognak Joint Venture, 30 P. 3d 101, 107 (Alaska 2001); Alaska Sales & Service v. Millet, 735 P.2d 743, 746 (Alaska 1987).

[36]  Knabel v. Heimer, 663 P.2d 551, 553 (Alaska 1983).

[37]  Mitford v. deLasala, 666 P.2d 1000, 1006 n. 1 (Alaska
(continued...)

Under the TBFOA, Unocal, as the "operator," has an obligation to obtain the approval of Forest before proceeding with projects where the cost exceeds $100,000.[38]  Unocal requested that Forest consent to the King Salmon buss project.  Forest refused to consent.  Unocal nonetheless went ahead with the buss project.  The question presented is not whether Forest received a benefit or was somehow unjustly enriched but whether Unocal is contractually entitled to recover from Forest its *pro rata* share of the expenses. The critical issue in resolving this particular aspect of the controversy between the parties is: Did Forest, in withholding its consent, breach the TBFOA?  If Forest breached the TBFOA, Unocal is entitled to recover its damages at law, presumably Forest's *pro rata* share of the project costs.   If Forest did not breach the TBFOA, Unocal is not entitled to recover.  Unocal is not entitled to obtain equitable relief for the breach of an express contract, an action at law.  Unocal's remedy at law is adequate.[39]

///

///

---

[37]  (...continued) 1983); B.B. & S. Const. Co. v. Stone, 535 P.2d 271, 275 n. 8 (Alaska 1975); Nordin Const. Co. v. City of Nome, 489 P.2d 455, 464 n. 9 (Alaska 1971).

[38]  TBFOA, § 7.2.

[39]  See Donnybrook Bldg. Supply, Inc. v. Interior City Branch, First Nat. Bank of Anchorage, 798 P.2d 1263, 1268 (Alaska 1990).

**V.   CONCLUSION AND ORDER**

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment is **DENIED**.

IT IS ORDERED THAT, there being no genuine triable issue of fact and Unocal cannot recover on its counterclaim for equitable relief as a matter of law, Defendant Union Oil Company of California's counterclaim for *quantum meruit* and/or unjust enrichment is **DISMISSED**.[40]

ENTERED this 7th day of July, 2006.

/s/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

---

[40]     "[I]f one party moves for summary judgment and, at the hearing, it is made to appear from all the records, files, affidavits and documents presented that there is no genuine dispute respecting a material fact essential to the proof of movant's case and that the case cannot be proved if a trial should be held, the court may sua sponte grant summary judgment to the non-moving party." Cool Fuel, Inc. v. Connet, 685 F.2d 309, 310 (9th Cir. 1982); see also Missions of America v. City of Los Angeles, 328 F.3d 548, 553 (9th Cir. 2003) (no error in granting summary judgment *sua sponte* where the moving party had "a full and fair opportunity to ventilate the issues involved"); Bird v. Glacier Elec. Co-Op, Inc., 255 F.3d 1136, 1152 (9th Cir. 2001) (reversing the district court and remanding with instructions to enter judgment in favor of the nonmoving party *sua sponte*); Nevada VTN v. General Ins, Co. of America, 834 F.2d 770, 776 (9th Cir. 1987) (same).