Brewster H. Jamieson, ASBA No. 8411122
Shannon W. Martin, ASBA No. 0105028
LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone: 907-277-9511
Facsimile: 907-276-2631
Email:     jamiesonb@lanepowell.com
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

FOREST OIL CORPORATION,

                Plaintiff,

v.

UNION OIL COMPANY OF CALIFORNIA
d/b/a UNOCAL ALASKA,

                Defendant.

Case No. 3:05-cv-00078-RRB

**MOTION FOR RECONSIDERATION OF ORDER AT DOCKET NO. 90**

      Defendant Union Oil Company of California ("Union Oil"), by and through its counsel, and pursuant to LR 59.1, hereby moves the Court to reconsider its order at Docket No. 90 ("Order Denying Defendant's Motion for Partial Summary Judgment at Docket No. 23, and Granting Plaintiff's Motion for Partial Summary Judgment at Docket No. 39") (the "Order").

      The Order errs by finding that the term "Cost" as used in Article 7 of the Alignment Agreement is limited and narrowed by the undefined term "participation claims." The Order finds that there is no evidence that "Cost" includes audit claims as asserted by Union Oil, but the Order overlooks and does not address two essential items of evidence: (1) the express contractual definition of "Costs" which includes audit claims; and (2) the Declaration of Kenneth W. Griffin which supports Union Oil's interpretation of Article 7, and which undermines the interpretation urged by Forest Oil and adopted by the Court.

      First, the Order fails to address, as was briefed in detail in Union Oil's "Reply/Opposition Re: Motion for Partial Summary Judgment Re: Waiver/Accord and Satisfaction" (Docket No. 53)

(Reply/Opposition), that "Cost" is a capitalized term, used consistently throughout the Alignment Agreement, with a unique, independent and specific contractual definition.

Article 1 of the Alignment Agreement provides as follows:

<u>Definitions</u>

For the construction and interpretation of this Agreement, the following capitalized terms shall have the meaning as set forth next to each such term hereinbelow. All capitalized terms not defined in this Agreement shall have the meaning given them in the Trading Bay Field Joint Operating Agreement or the Trading Bay Unit Operating Agreement, respectively.

*See* Ex. A (to Motion). Because "Cost" is not included in the list in the Alignment Agreement, that term "shall have the meaning given them in the Trading Bay Field Joint Operating Agreement or the Trading Bay Unit Operating Agreement, respectively." The Operating Agreements referred to are specifically defined under Articles 1.5 and 1.9 of the Alignment Agreement, and are also attached as Exhibits A and B to Forest's Complaint at Docket 1.

The Operating Agreements define the capitalized term "Costs"[1] to mean "all costs and expenses, other than Lease Burdens, incurred in the development and operation of each Working Interest Participating Area pursuant to this Agreement [or the Unit Agreement] <u>and all other expenses that are herein made chargeable as Costs, determined in accordance with the Accounting Procedure set forth in Exhibit "C" hereto.</u>" *See* Exhibit A to Forest's Complaint, at Article 3.4; Exhibit B to Forest's Complaint, at Article 2.2. The Accounting Procedure referred to in the "Costs" definition are the COPAS Procedures, which contain a provision for audits. *See* Ex. A to Forest's Complaint, at p. 53, and Ex. B to Forest's Complaint, at p. 39, COPAS Procedures, at ¶¶ 4-5. The COPAS Procedures set forth the manner in which parties to a joint operating agreement are to reconcile accounting disputes *outside of litigation*. For example, the COPAS Procedures empower the non-operator to audit the Operator annually; however, if the non-operator wishes to protest or question the correctness of the charges, bills or statements for any given year, the non-operator shall take written exception to such charges or bills within 24 months of the year in which the charges, bills or statements were rendered. *See* Ex. A to Forest's Complaint, at 53, and Ex. B to Forest's

---

[1] There is nothing in the record indicating that the singular capitalized "Cost" as used in Article 7 is to be interpreted any differently than the plural capitalized "Costs."

**Motion for Reconsideration of Order at Docket No. 90**
*Forest Oil Corporation v. Unocal Alaska* (Case No. 3:05-cv-00078-RRB)   Page 2 of 5

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

Complaint, at 39, COPAS Procedures, at ¶¶ 4-5.  If, through the audit process, the parties are unable to come to an agreement, then "the Accounting Subcommittee will refer the matter to the Unit Owners Committee for resolution and settlement." *Id.*

The COPAS Procedures, including but not limited to the audit process defined by ¶¶ 4 and 5 therein, are THE mechanism for the parties to the Operating Agreements to resolve "Cost" disputes outside of litigation (*i.e.*, "all costs and expenses, other than Lease Burdens, incurred in the development and operation of each Working Interest Participating Area pursuant to this Agreement [or the Unit Agreement] and all other expenses that are herein made chargeable as Costs, determined in accordance with the Accounting Procedure set forth in Exhibit "C" hereto." *Id.*)  Therefore, under the definition of "Costs" and the application of the COPAS Procedures, audit claims are expressly included in the scope of "Cost" items.  Should the parties be unable to resolve "Cost" disputes through this audit process, then either party may assert "claims" in a litigation context; this is exactly what Forest chose to do by commencing this lawsuit, and this is exactly the type of claim waived by the Alignment Agreement.

Forest Oil advances, and this Court apparently has adopted, a unique and precise meaning of the term "participation."  But the word "participation" is not defined in the Alignment Agreement or other TBU Agreements, and it therefore cannot be assigned some narrow, unusually technical definition.  Rather, it should be given its ordinary meaning, which, in this context is merely a reflection that the parties "participate" (plain meaning) in the "Costs" (technical, defined meaning) of the TBU, and that the parties frequently disagree about those Costs and their obligation to "participate" in them, resulting in "claims" arising out of unresolved audits.  Instead of this ordinary and common sense interpretation, Forest Oil and this Court have identified and defined a new, specific species of claim, labeled "Cost participation," even though this term is nowhere defined in the TBU Agreements or the Alignment Agreement.[2]  Forest Oil submitted no evidence at all to support this argument. There is simply no term in any contract, and certainly no extrinsic evidence, that the words "participation claims" were meant to re-define and narrow "Cost" to the allocation of

---

[2] The closest Forest Oil can come to this is the heading of Article 5, entitled Cost Participation, but this term is undefined, and, more importantly, Article 9.7 of the Alignment Agreement makes it clear that headings "are for convenience and reference only and shall not be considered in interpreting the provisions hereof."

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Motion for Reconsideration of Order at Docket No. 90**
*Forest Oil Corporation v. Unocal Alaska* **(Case No. 3:05-cv-00078-RRB)**   Page 3 of 5

costs in the way asserted by Forest Oil and found in the Order. That is, there was no support in the record for the Court to adopt Forest Oil's interpretation of Article 7.

Nor does interpreting the Alignment Agreement as a whole support Forest Oil's argument. The Order, at p. 10, quotes the Preamble to the Alignment Agreement. But that Preamble uses the capitalized term "Costs." Indeed, "Costs" is used throughout the Alignment Agreement. Clearly, one of the express purposes of the Alignment Agreement, as stated in the Preamble itself, was to resolve disputes over "Costs." By the specific definition of "Costs," this would also involve resolving audit claim disputes.

Further, and also very importantly, uncontested extrinsic evidence supports Union Oil's interpretation of Article 7.[3] The Order overlooked the <u>only</u> evidence of the parties' intent in the Alignment Agreement, which was the Declaration of Kenneth W. Griffin. As was briefed extensively in Union Oil's Reply/Opposition, pp. 10-12, Mr. Griffin was Forest Oil's Planning Manager for Forest in 2000 and 2001, and was involved with the preliminary negotiations and final execution of the Alignment Agreement; he thus became familiar with the terms of the Alignment Agreement. Griffin Declaration, at ¶¶ 1-2. Mr. Griffin was familiar with the definition of the capitalized term "Costs" and the application of the COPAS Procedures as defined by the Trading Bay Agreements. *Id.*, at ¶¶ 2-3.

As shown in Mr. Griffin's declaration, he understands that the COPAS Procedures contain a provision for audits, and that Union Oil and Forest Oil had not resolved various disputed items of expense at the time the Alignment Agreement was executed. He understands the definition section of the Alignment Agreement to mean what it says, *i.e.*, "that all capitalized terms not defined in this Agreement shall have the meaning given them in the Trading Bay Field Joint Operating Agreement or the Trading Bay Unit Operating Agreement, respectively." *Id.* Mr. Griffin averred:

> My understanding of this Article is that the capitalized terms "Production" and "Cost" shall have the meaning given to them in the Trading Bay Agreements as

---

[3] The Order mentions and discounts the declaration of Kevin Tabler, but misconstrues that declaration. As was discussed in Union Oil's Reply/Opposition, at pp. 3-4, Mr. Tabler's declaration was not offered as evidence of Union Oil's subjective intent in the Alignment Agreement; it was offered principally to authenticate the Alignment Agreement and to confirm its execution in December 2001. While Mr. Tabler's declaration is true in every respect, Union Oil never claimed his declaration was necessary to give meaning to the plain and unambiguous language of Article 7.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

> described in paragraph 3 above.  My understanding of the plain language of the Alignment Agreement is that the term "Cost" as it is used in Article 7 shall have the meaning given to it in the Trading Bay Agreements as described in paragraph 3 above.   I do not recall the specific intent of either Union Oil or Forest to exclude audits from the scope of Article 7 of the Alignment Agreement.

*Id.,* at ¶ 5.

Mr. Griffin's declaration is the only evidence in the record of the parties' intent regarding Article 7.  Mr. Griffin worked for Forest Oil, the party to be charged with the application of the Article 7 waiver.  He was a principle negotiator of the Alignment Agreement for Forest Oil, and avers to an objective and neutral reading of the plain and unambiguous language of Article 7.  Forest Oil did not produce any evidence contrary to Mr. Griffin's averment that neither party specifically intended to exclude audits from Article 7.  There is thus no support in the record for the Order to disregard Mr. Griffin's declaration, and for the Court to substitute an interpretation of Article 7 urged by Forest Oil that is in direct conflict with the understanding of the Forest Oil employee who is most familiar with the negotiation and execution of the Alignment Agreement.

DATED this 14th day of July, 2006.

        LANE POWELL LLC
        Attorneys for Defendant


By   s/ Brewster H. Jamieson
    Brewster H. Jamieson, ASBA No. 8411122
    301 West Northern Lights Boulevard, Suite 301
    Anchorage, Alaska  99503-2648
    Tel:   907-277-9511
    Fax:   907-276-2631
    Email:  jamiesonb@lanepowell.com

I certify that on July 14, 2006, a copy of
the foregoing was served by ECF on:

Jeffrey M. Feldman, feldman@frozenlaw.com

  s/ Brewster H. Jamieson
017351.0040/155881.1

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631