Jeffrey M. Feldman
Alaska Bar No. 7605029
R. Scott Taylor
Alaska Bar No. 8507110
FELDMAN ORLANSKY & SANDERS
500 L Street, Fourth Floor
Anchorage, Alaska  99501
Telephone:   (907) 272-3538
Facsimile:    (907) 274-0819
Email:         feldman@frozenlaw.com
                   taylor@frozenlaw.com

*Attorneys for Plaintiff Forest Oil Corporation*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| FOREST OIL CORPORATION and PACIFIC ENERGY ALASKA OPERATING LLC, <br><br> Plaintiffs, <br><br> v. <br><br> UNION OIL COMPANY OF CALIFORNIA d/b/a UNOCAL ALASKA, <br><br> Defendant. | Case No. 3:05-cv-00078-RRB <br><br> **OPPOSITION TO MOTION TO DISMISS PLAINTIFF FOREST OIL CORPORATION** |

Union Oil Company of California (Unocal) moves to dismiss Forest Oil Corporation (Forest) as a plaintiff in this case, based on the false premise that Forest no longer has any interest in this litigation. When Forest transferred its interests in the Trading Bay Unit (TBU) to a subsidiary, Forest Alaska Operating LLC (FAO), on

November 1, 2006, it retained its causes of action against Unocal for audit claims concerning TBU production costs incurred prior to the date of transfer. FAO, subsequently purchased by Pacific Energy Resources Ltd. (PERL) and renamed Pacific Energy Alaska Operating LLC (PEAO), was joined as a party plaintiff after the asset transfer because FAO had assumed an interest in the equitable claims affecting future operations of the TBU. However, Forest remains the proper plaintiff for the pending claims from its own audits of TBU operations prior to the asset transfer. PEAO did not acquire these claims and is in no position to litigate them. There is no basis for dismissing Forest from this lawsuit.

> **I.   WHILE FOREST NO LONGER HAS AN INTEREST IN THE TRADING BAY UNIT, IT RETAINS AN INTEREST IN THIS LAWSUIT.**

Unocal argues that Forest is no longer a proper plaintiff in this matter because it has transferred and assigned all of its interests in the TBU. The principal fallacy of this argument is that Forest did not transfer the audit claims (and the defense of Unocal's counterclaims) that are at issue in this case – and which entirely concern costs billed by Unocal, as the operator, for oil and gas production during the period that Forest was the joint-interest owner in the TBU. Forest transferred all of its interest in the TBU to FOA as of the effective date of November 1, 2006. But just as Forest did not transfer to FOA the revenue that it received from TBU oil and gas production prior to the effective date of the transfer, it did not transfer the TBU costs, and audit claims disputing those costs, related to that prior production.

The Master Conveyance assigning "all of the right, title and interest owned" by Forest in the TBU expressly states that the transfer is "effective as of 12:00 a.m., Anchorage Alaska local time, on November 1, 2006."[1] Any assignment of interests in oil and gas leases must be approved by Alaska's Department of Natural Resources. Under Alaska law, "The transferor is liable for all obligations under the lease or oil and gas exploration license accruing before the approval of the transfer."[2] Forest's assignments of its interests in the TBU were approved by the State as of November 1, 2006.[3] Accordingly, under both the explicit terms of the written assignment and Alaska law, Forest remains liable for its TBU obligations accruing before the effective date of the transfer of its interests in the TBU. The audit claims, which Unocal admits "are now the principal focus of this suit,"[4] all accrued before the effective date of transfer.

Unocal's argument that Forest "effectively assigned [these] causes of action to PEAO" ignores the "effective date" clearly stated in the assignment. Unocal's reliance on *Knott v. McDonald's Corporation* is misplaced for the same reason. In *Knott* the Ninth Circuit held that the Knotts' broad assignment of all of their right title and interest in McDonald's franchises "evinces an intent to transfer … 'all' rights under the franchise agreements," including the right to sue for breach of the franchise agreements.[5] In

---

[1] Exhibits D & E to Motion to Dismiss Forest Oil Corporation, at p. 1.
[2] 11 AAC 82.605(b).
[3] *See, e.g.*, Exhibit C to Motion to Dismiss Forest Oil Corporation, at p. 3.
[4] Motion to Dismiss Forest Oil Corporation, at p. 8.
[5] 147 F.3d 1065, 1068 (9th Cir. 1998)

Forest's written assignment, the clear and unambiguous "effective date" evinces an intent to transfer all right title and interest in the TBU only as of that date.

Moreover, even if there were ambiguity about whether the written assignment included these audit claims, it is resolved by the clear intent of the parties that these claims remained with Forest. "[W]hether an assignment of contract rights has occurred is a function of the intent of the parties."[6] Forest's Master Conveyance and related assignments state that they "shall be governed by and construed in accordance with the laws of the State of Colorado …."[7] No particular formality is required under Colorado law to constitute a valid assignment, as long as the intent is apparent.[8] That intent may be reflected by the written instruments or may be inferred from the acts and conduct of the assignor and from the surrounding circumstances.[9] When Forest transferred its interests in the TBU to FOA, it "did not include claims, suits, audit exceptions and other assets that relate to periods of time prior to the effective date of the transfer."[10] Similarly, when PERL purchased FOA, it was disclosed and intended that the audit adjustments that

---

[6]   *Knott*, 147 F.3d at 1067 (quoting the "undisputed Illinois rule of law") (citation omitted).

[7]   Exhibit E to Motion to Dismiss Forest Oil Corporation, at p. 6.

[8]   *Lookout Mountain Paradise Hills Homeowners' Assn. v. Viewpoint Assoc.*, 867 P.2d 70, 73 (Colo. App. 1993).

[9]   *Id*. at 73-74.

[10]   Affidavit of Richard W. Schelin, attached, at ¶ 3.

accrued prior to the effective date of the sale remained with Forest and "represent Forest Oil's damage claims in this case."[11]

The parties' subsequent course of performance, including Unocal's, supports the uniform intent and understanding that the audit claims in this litigation remain with Forest. After Forest transferred its interests in the TBU, Unocal cooperated with Forest's subsequent audits of the TBU joint account through 2006. Unocal responded to Forest's auditors' exceptions to certain costs charged through 2006 and, on occasion, where audit exceptions have been granted, Unocal has sent Forest reimbursement by check for credits allowed.[12] The parties' conduct and these surrounding circumstances are consistent with the parties' stated intent that the audit claims still belong to Forest.[13]

## II. FOREST'S RETENTION OF THESE AUDIT CLAIMS DOES NOT VIOLATE THE TRADING BAY UNIT AGREEMENT.

Unocal argues incorrectly that Forest's retention of these audit claims would constitute a partial transfer of its interests in the TBU, contrary to what it terms the "Maintenance of Uniform Interest Provision (MUI)," paragraph 19, of the Trading Bay Unit Agreement. But Forest did transfer all of its interests in the TBU. There was no

---

[11]    Affidavit of Darren Katic, President of PERL, attached, at ¶ 3.

[12]    Affidavit of Richard W. Schelin, at ¶ 5.

[13]    Even if somehow Forest had inadvertently transferred the audit claims to what is now PEAO, contrary to the express intent of the parties, the claims could simply be transferred by the parties back to Forest. Or the relevant contracts could be reformed to correct this mistake. A court may reform a contract "if the words of the writing do not correctly express the meaning that the parties agreed upon." ARTHUR L. CORBIN, 7 CORBIN ON CONTRACTS § 28.45, at 281 (2002). *See also* RESTATEMENT (SECOND) OF CONTRACTS § 155 cmt. A (1981).

*Forest Oil Corporation, et al. v. Union Oil Company*    Page 5 of 9

partial transfer; all of Forest's "right, title and interest" in the TBU was assigned, as of the effective date, to what is now PEAO. Forest does not assert any current interest in the TBU and acknowledges that "[f]rom the effective date of November 1, 2006 forward, claims related to the Trading Bay Unit and its future operations were owned by FAO."[14] Precisely because of this complete assignment, FAO was added as a party plaintiff in this case, and, renamed PEAO, is the proper plaintiff to pursue the equitable claims affecting current and future TBU operations.[15]

Forest's retention of audit claims, concerning costs accrued before its interests in the TBU were transferred, does not violate the MUI provision in the Trading Bay Unit Agreement. The entirety of Forest's interests in the TBU was transferred and Forest retains no voice in the operation of the Unit. Forest merely retained its right to dispute the pre-transfer TBU costs, for which Forest alone remains liable and for which Forest alone has already paid. Resolution of these past audit issues is not determinative or binding on future TBU cost accounting. To the extent that these audit claims may influence future charges to the TBU joint account, the current TBU interest owners, PEAO and Unocal, are both well represented in this action.

### III. EVEN IF ITS AUDIT CLAIMS HAD BEEN TRANSFERRED, DISMISSAL IS DISCRETIONARY AND FOREST SHOULD REMAIN A PARTY PLAINTIFF.

In effect, Unocal seeks an order under Civil Rule 25(c) to dismiss the original party, Forest, and substitute PEAO as the transferee of Forest's interests in the TBU. As

---

[14]  Affidavit of Richard W. Schelin, at ¶ 3.

[15]  *See* Docket 107.

with joinder of a transferee, dismissal of the original party, even when its entire interest in the litigation has been transferred, is purely a discretionary determination by the court. As explained by Wright, Miller, and Kane:

> Rule 25(c) speaks to the situation in which "an interest is transferred" during the pendency of an action. . . . The rule applies to ordinary transfers and assignments, as well as to corporate mergers. . . .
>
> The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on the successor in interest even though the successor is not named. An order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation. . . .
>
> . . . If the transferor and the transferee are both already parties to the action, the court, again in its discretion, may dismiss the transferor from the suit. Since the matter is discretionary, the court also may refuse substitution if this seems the wisest course.[16]

Here, even if Forest had transferred all of its interests in this case, its dismissal would not facilitate the conduct of this litigation and is not the wisest course. Forest is the only party plaintiff that conducted the audits at issue in this case. And Forest is the only party plaintiff that was a joint-interest owner in the TBU at the time these contested TBU costs were incurred and paid. As all parties stated in the recent Joint Status Report:

> Even while the respective ownership interests were being transferred, the parties have worked diligently to narrow the claims and counterclaims that have been raised in this case. Forest Oil and Unocal have exchanged tens of thousands of documents related to these claims and

---

[16]  7C Charles A. Wright, Arthur R. Miller & Mary K. Kane, FEDERAL PRACTICE AND PROCEDURE § 1958, 691-703 (3d ed. 2007) (citations omitted).

their respective audit teams and counsel have independently reviewed each audit exception claim and response. Through this process, which is on-going, some of the audit exceptions have been narrowed or resolved. Approximately 250 Joint Account audit issues remain outstanding.[17]

All of this discovery and progress would be for naught if Forest were to be dismissed and PEAO were the sole remaining plaintiff to prosecute these audit claims and defend the counterclaims. PEAO's interest in the TBU began on January 1, 2007; it did not participate in and has no direct knowledge of the audits of the TBU joint interest billings prior to January 1, 2007. Forest's continued presence in this case will facilitate the conduct of this litigation and the ultimate resolution of these audit claims and counterclaims. Dismissal of Forest would not be warranted, even if it had assigned away the right to pursue these claims, which, as has been demonstrated, it did not.

### IV.   CONCLUSION

There is no merit to Unocal's argument that Forest should be dismissed from this case, leaving PEAO to litigate audit claims in which it has no interest or knowledge. While Forest has no current interest in the TBU, it remains liable for its share of TBU costs that were incurred when Forest was a joint-interest owner. Forest retains an interest in its audits challenging whether some of those costs were appropriately charged by Unocal. Forest remains a proper plaintiff and the appropriate party to litigate these audit claims. There is no justification for Forest's dismissal. Unocal's motion must be denied.

---

[17] *See* Docket 115 at p. 2.

Dated this 2nd day of June, 2008, at Anchorage, Alaska.

By:   s/ R. Scott Taylor

FELDMAN ORLANSKY & SANDERS
500 L Street, Fourth Floor
Anchorage, Alaska  99501
Phone: (907) 272-3538
Fax:  (907) 274-0819
Email:  taylor@frozenlaw.com
[Alaska Bar No. 8507110]
*Attorneys for Forest Oil Corporation*

**Certificate of Service**

I hereby certify that on the 2nd day of June, 2008, a copy of the
**Opposition to Motion to Dismiss Plaintiff Forest Oil Corporation**
was served electronically on:

Brewster H. Jamieson
Marc D. Bond
Michael Jungreis

s/ R. Scott Taylor