Brewster H. Jamieson, ASBA No. 8411122
Peter C. Partnow, ASBA No. 7206029
LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone:  907-277-9511
Facsimile:  907-276-2631
Email:   jamiesonb@lanepowell.com
Email:   partnowp@lanepowell.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| FOREST OIL CORPORATION and PACIFIC ENERGY ALASKA OPERATING LLC,<br><br>                              Plaintiffs,<br><br>v.<br><br>UNION OIL COMPANY OF CALIFORNIA d/b/a UNOCAL ALASKA,<br><br>                              Defendant. | Case No. 3:05-cv-00078-RRB<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS <u>PLAINTIFF FOREST OIL CORPORATION</u>** |

## I. INTRODUCTION

Plaintiff Forest Oil Corporation ("Forest"), in its own Opposition brief, admits that it transferred "all of its interests in the TBU," and could not have retained claims for pre-2006 audits. Indeed, Forest readily agrees in its Opposition that it "transferred all of its interests in the TBU to FOA as of the effective date of November 1, 2006." Docket 126 at 2. Then, mere sentences later, Forest unequivocally admits that "the audit claims which . . . 'are now the principal focus of this suit,' all accrued before the effective date of the transfer." *Id.* at 3. Clearly, since the audit claims "accrued before the effective date of the transfer," and since Forest transferred all of its interests "as

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

of the effective date," the transfer, first to FAO, and ultimately to Pacific Energy Alaska Operating LLC ("PEAO"), included the transfer of interest in the "accrued" audit claims. That is precisely Unocal's point.

Even though Forest concedes it no longer possesses an interest in the Trading Bay Unit ("TBU") and transferred all of its audit claims, it still asserts that it retains a voice, through this lawsuit, in the interpretation of the various documents that control the ongoing relationship between the current TBU interest owners. While Forest may or may not be interested in the result of this lawsuit arising from its dealings with PEAO, the resolution of any such "interest" (such as a right to receive income that might be derived from the resolution of the various audit claims that are the subject of this lawsuit) is not a matter of dispute involving defendant Unocal, is not an issue raised by the complaint in this lawsuit and is not properly before this Court.

Forest's position that it retains the right to continue as a party in this case despite its assignment of all of its interests in the TBU is at odds with the documents by which it transferred its TBU interests. It is at odds with the clear requirements of the TBU unit agreement, which prohibit any partial transfer of interests. And, its position is "supported" only by illogical, inadmissible, and otherwise legally improper arguments and assertions.

In this reply brief, defendant will address the arguments put forth by Forest in its opposition brief, and demonstrate why these arguments are of no substance.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

## II. DISCUSSION

A. **Forest Did Not, and Legally Could Not Have, Retained Its Causes of Action Against Unocal.**

Forest asserts that it did not transfer its audit claims when it divested itself of its interests in the TBU. (Opposition, Docket No. 126 at 2). However, there is nothing in any of the transfer documents that states or even suggests that Forest maintained an interest in the audit claims that are the subject of this lawsuit. *See* Exhibits D and E to the Motion to Dismiss (Docket No. 120). Indeed, much to the contrary, § 1.6 of both the Master Conveyance initially transferring Forest's interests to Forest Alaska Holding LLC and the Master Conveyance further transferring those interests to Forest Alaska Operating LLC each provide that the assignor grants, assigns, transfers, and conveys to the assignee

> **All** of Assignor's right, title and interest in and to Assignor's receivables, inventory, payables, proceeds, expenses, and other accounts, obligations, benefits, rights, and duties to the extent related to or used in connection with the Properties and Hydrocarbons, but excluding any hedges, saps, collars or similar financial instruments or agreements . . . .

*Id.* (emphasis added). The claims asserted in the suit—numerous audit exceptions asserting that the TBU joint account was overcharged[1]—fall squarely within the plain language of this broad and unqualified transfer. Putting aside the limitations established by ¶ 19 of the TBU Unit Agreement, addressed in Unocal's opening memorandum, Forest could have reserved entitlement to pursue the resolution of the various audit claims. Yet nothing in the transfer documents states or implies that it did so.

---

[1] Docket No. 1, Complaint at ¶ 38: "Forest's audit of Unocal's billings for each audit year has disclosed substantial inappropriate and excessive billings made by Unocal to the joint account . . ."

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

But the transfer documents are not completely silent as to this lawsuit. Even though there is no mention of Forest retaining audit claims, there *is* mention of Forest indemnifying PEAO for losses associated with counterclaims Unocal brought against Forest. Specifically, Amendment No. 1 to the Membership Interest Purchase Agreement entered into by Forest and PEAO (as well as by FAH and FAO) provides that Forest will indemnify and hold harmless PEAO for "losses arising from acts or omissions occurring prior to Closing which are or may be asserted in . . . . *Forest Oil Corporation v. Union Oil Company of California, d/b/a Unocal Alaska*, . . . Case No. A-05-0078." *See* Exhibit J at 3, ¶ 12, attached to Declaration of Peter C. Partnow.

The presence of this language reveals that Forest and PEAO *did* contemplate this lawsuit when the transfer documents were confected. The parties' intent – as indicated in the documents – was that all of Forest's interests in the TBU would be transferred, but that Forest would retain liability for Unocal's counterclaims. Had the parties intended for Forest to retain the affirmative claims it made in this lawsuit, they would have so stated. Indeed, under the well-established principle of *expressio unius est exclusio alterius*, the inclusion of indemnity language combined with the absence of claim-retention language demonstrates Forest did not retain its audit claims – particularly in view of other contractual language affirming that Forest was assigning "all" of its right, title and interest in the TBU. *Angnabooguk v. State*, 26 P.3d 447, 455 (Alaska 2001); *Bentley Mall Associates v. ADC Distributing Corp.*, 1997 WL 33812770 (Alaska 1997).

In short, the transfer documents speak for themselves. This Court need not look elsewhere to determine the parties' intent.

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**B.     There Is No Admissible Evidence That the Intent of "The Parties" Was For the Audit Claims to Remain with Forest.**

Because Forest cannot change the clear provisions of the transfer documents, it resorts to after-the-fact affidavits that purport to show that Forest retained audit claims. Yet it is clear under the applicable substantive Alaska law that these post-litigation, self-serving affidavits cannot create issues of fact as to the meaning of the contracts. *Estate of Polushkin ex rel. Polushkin v. Maw,* 170 P.3d 162 (Alaska 2007); *Still v. Cunningham*, 94 P.3d 1104, 1110 (Alaska 2004); *Peterson v. Wirum,* 625 P.2d 866, 870 (Alaska 1981).

In addition, Forest's attorney, Mr. Schelin, provides no factual support for his after-the-fact declaration as to the intent of agreements, the wording of which provides absolutely no support for the position taken in his affidavit. Further, while asserting that in negotiations with PERL, "it was specifically disclosed that FAO's Trading Bay assets did not include Forest's claims against Unocal for audit adjustments for the years that Forest had been the working interest owner in the Trading Bay Unit," Mr. Schelin's affidavit is silent as to who made any such disclosure, to whom it was made, or when it was made. And it is not accompanied by any contemporaneous documentation.

Indeed, the conveniently-alleged existence of any disclosure in the after-the-fact affidavit of Forest's legal counsel would come as a surprise to PEAO, the party to whom the disclosure was allegedly made. In its subsequently withdrawn motion to file an amended complaint, PEAO observed on January 15, 2008, that "there is now a conflict between Forest Oil and PEAO as to which owns the claims asserted in this action by Forest Oil." Docket No. 113 at 1. In its proposed amended complaint, PEAO specifically noted that "the rights and interests conveyed and transferred

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

[to it] included all rights and interests as to which Forest Oil Corporation seeks relief in this case." *Id.* at ¶ 8.

Regarding Mr. Katic's affidavit, not only is his after-the-fact declaration inadmissible for the same reasons as is Mr. Schelin's, but he also admittedly had no involvement in the original transfer of rights from Forest to Forest Alaska Holding LLC (and thence to Forest Alaska Operating LLC in November of 2006), and is in no position to state the intent of those transactions. Moreover, the position set forth in the Katic affidavit is starkly at odds with both the wording of the transfer documents and the position PEAO has previously taken in this litigation. As noted above, there is absolutely nothing in the transfer documents that states or even remotely suggests that Forest maintained the right to pursue any claims pertaining to the TBU. Rather, the documents clearly stated that Forest was transferring, among other things, "all of Assignor's right, title and interest in and to Assignor's receivables, inventory, payables, proceeds, expenses, and other accounts, obligations, benefits, rights, and duties . . ."[2]

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

---

[2] Even if Mr. Katic were correct that Forest had retained the right to ""**receive** any moneys resulting from the audit adjustments under the Trading Bay agreements for all periods prior to 7:00 a.m. local time on January 1, 2007," such an agreement between Forest and PEAO as to who might ultimately **receive** money is not determinative as to who has the right to pursue claims to establish entitlement to any such money. *See* Section 3, *infra*. Further, Mr. Katic was the signatory on behalf of PEAO, of Amendment 1 to the Membership Interest Purchase Agreement (Exhibit J) which, as noted above, specifically mentions this lawsuit, but does not state or suggest Forest's right to retain any affirmative claims.

**Reply in Support of Motion to Dismiss Plaintiff Forest Oil Corporation**
*Forest Oil Corporation v. Unocal Alaska* **(Case No. 3:05-cv-00078-RRB)**                    Page 6 of 12

C.     **The Course of Conduct Does Not Support Forest's Assertion That Unocal Understood That the Audit Claims Remained with Forest.**

Forest argues that because defendant issued one or more reimbursement checks to Forest after Forest had assigned its interests, a "course of conduct" was established indicating that the audit claims remain with Forest. For at least two reasons, any such payment supports no such conclusion.

First, Forest ignores the specific provisions of the May 24, 2007 Membership Interest Purchase Agreement among Forest, Forest Alaska Holding LLC, Forest Alaska Operating LLC and PEAO. *See* Exhibit K, attached to Declaration of Peter C. Partnow. Specifically, ¶ 10.1 of that agreement recognized that for a period of time after closing and until Pacific was in a position to actually conduct operations on its own, that "FOC [Forest] shall operate such portion of the Oil and Gas Properties for the account of Buyer," for which services Forest would be paid a fee. *Id*. It was thus quite natural and understandable that Unocal would continue to deal with Forest and, where payment on underlying disputes appeared appropriate, to issue any such payment to Forest. The fact that Forest was acting as PEAO's agent in no way constituted a concession that Forest on its own behalf retained any interest in the audit claims.

Second, the right to receive a stream of income does not establish or imply the right to dictate the terms and conditions under which that income stream might be developed or generated. By way of an example, while an attorney might have the right to receive money as a percentage of any recovery obtained in a contingency fee case, it is the client, not the attorney, who must establish the right to recover any money. Similarly, where a medical insurer has paid for treatment for which it has a lien on any recovery by the injured person, it is the patient, not the insurer, who must establish the right to recover damages. As in the instant case, these are examples of the many

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

common situations where a party who may have the right to receive a stream of income **if** an entitlement is established does not itself have the right to establish the entitlement.  Thus even if, by some agreement with PEAO, Forest has the right to receive any monies generated by the resolution of the audit issues in this case (all of which relate to the propriety of charges against the TBU joint account), it is PEAO, not Forest, who must establish, vis-à-vis Unocal, an entitlement to any such moneys.

D.   **PEAO, Like Any Assignee, is Perfectly Capable of Litigating Any of the Claims in This Lawsuit, Should it Choose to Do So.**

It is hardly a novel proposition that an assignee of rights steps into the shoes of the assignor, and can pursue litigation regarding those rights.  *See, for example*, *Holta v. Certified Financial Services, Inc.*, 49 P.3d 1104 (Alaska 2002); *Lloyd's & Inst. of London Underwriting Companies v. Fulton*, 2 P.3d 1199 (Alaska 2000); *Alaska Tae Woong Venture, Inc. v. Westward Seafoods, Inc.*, 963 P.2d 1055 (Alaska 1998); A.S. 45.02.210.

Despite this, Forest suggests that because PEAO "did not participate in and has no direct knowledge of the audits of the TBU joint interest billings prior to January 1, 2007," Forest must remain as a party plaintiff to pursue those claims. (Opposition, Docket No. 126 at 8).

Significantly, however, PEAO has not opposed the instant motion or in any way suggested that it is incapable of pursuing any legitimate issues it believes may have been raised by the audits involved in this litigation.  Moreover, should PEAO wish to pursue any of those claims, it is perfectly capable of relying upon the very same individuals who were involved at the time and upon whom Forest would have relied to establish its claims had Forest not assigned the rights to litigate those claims to PEAO.  PEAO has competent counsel, who is empowered with all the tools

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

supplied by the Federal Rules of Civil Procedure that enable litigants to secure documents and testimony from any person or entity with relevant knowledge.[3]

Forest's bald assertion that "PEAO . . . is in no position to litigate" the remaining claims in this lawsuit lacks both factual and legal support, and is not a basis for ignoring the plain language of the transfer documents.

E.  **Contrary to Forest's Bald Assertions, Resolution of the Audit Claims Does Impact the Ongoing Relationship of the Current Interest Owners.**

Despite Forest's own complaint alleging that its claims in this suit involve "inappropriate and excessive billings made by Unocal to the joint account," Forest asserts in its opposition to the instant motion that the audit claims related "merely [to]. . . its right to dispute pre-transfer costs" and that "resolution of these past audit issues is not determinative or binding on future TBU cost accounting." Opposition, Docket No. 126 at 6. Forest would have the Court believe that the audit claims are nothing more than simple accounting disputes involving only aggregation or validation of numbers of long-concluded transactions. As Unocal showed in its opening memorandum (Docket 120 at 8-9), nothing could be farther from the truth. The various issues in dispute are almost exclusively issues that arose annually and pertained to the proper accounting treatment of various expenses that impacted the TBU operations and the extent to which such expenses could be charged against the TBU joint account.

---

[3] Forest also glibly ignores the fact that having divested itself of all of its Alaska operations, Forest no longer has any Alaska employees. Indeed, many of Forest's former employees in its Alaska operations now are employed by PEAO. In many cases, PEAO has easier and more direct access to such potential witnesses then does Forest.

**Reply in Support of Motion to Dismiss Plaintiff Forest Oil Corporation**
*Forest Oil Corporation v. Unocal Alaska* **(Case No. 3:05-cv-00078-RRB)**     Page 9 of 12

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

In its opening memorandum, Unocal discussed in some detail one such issue, namely the treatment of so-called "time writing" charges. *See* Docket 120 at 8-9. To refute Forest's glib assertion that these audit claims do not impact ongoing TBU operations, it may be helpful to discuss several additional areas that are raised in the audit claims.

Another of the annually-recurring audit issues relates to costs of Unocal's OSK Dock. Forest contends the building at the dock is a "warehouse," and therefore chargeable to Unocal's overhead, while Unocal contends this building is a "shore-based facility," directly chargeable to the TBU. This issue has been raised in all seven audit years covered by this case. *See generally*, Docket No. 120; Exhibit G at 3-7. Looking at Forest's 2000 audit exception 26 as an example, Forest asserted that "care should be taken to exclude costs which may occur at the Shore Base facility location but which do not apply to Shore Base Facility operations (e.g. warehouse space . . . warehouse personnel, etc.)." *Id.* In its denial of the audit exception, Unocal provided this rationale:

> Please be aware that the costs referenced do not pertain to a warehouse operation. This is a dock operation which because of extreme winter weather conditions must necessarily have a covered/indoor area . . . The informal name of "warehouse" for an operations building does not automatically qualify the dock operation as a warehouse as envisioned by . . . our agreements.

Exhibit L, attached to Declaration of Peter C. Partnow. The resolution of this issue clearly impacts the current TBU interest owners. Any decision as to these audit issues will almost certainly be determinative as to the continuing treatment of this facility. The current interest owners are thus interested in the Court's determination as to the types of structures that are billable costs against the interest owners. The determination by this Court will govern the ongoing relationship of Unocal and PEAO; those entities, not Forest, have the standing to raise this issue and pursue its resolution by the Court.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

Yet another example of the audit issues involved in this litigation is Forest's 2004 exception 24, which asserts that Unocal charged "a total of $226,853.72 for costs related to the repair or construction of a wind wall . . .[and] [a]ll projects exceeding one hundred thousand dollars ($100,000) shall require approval of the parties."  Exhibit M, attached to Declaration of Peter C. Partnow.  The exception seeks reimbursement for the costs associated with the wind wall repair, because Forest allegedly did not authorize its construction in advance, even though Forest recognizes the safety issue addressed by the wind wall.  Unocal denied that exception, noting as follows:

> This project was undertaken by Unocal due to serious safety alerts or under emergency safety preventions.  There were pieces of steel falling off the wind wall that could have seriously injured or killed an employee or contractor, or it could have seriously damaged equipment.  . . .we [assumed] Forest Oil would have approved the [expenditure] because of Safety and Liability concerns.

*Id.*  A decision on this audit issue in Forest's favor would elevate form over substance, and provide a financial disincentive for Unocal undertaking safety repairs – which disincentive would relate to any future actions Unocal might deem necessary to address immediate health and safety concerns.  Since the ongoing relations of the current interest owners will be significantly impacted by a decision on this issue, regardless of what that decision might be, Pacific, not Forest, should decide if it wishes the operator of the TBU to be subjected to such disincentives.

Since resolution of most, if not all, of the issues raised in the various audits involved in this case **does** directly and materially impact the ongoing relationship of the current interest owners, an entity with no ongoing interest in the operation of the TBU is not a proper party to argue the correct interpretation and application of the operative documents.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska  99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

**F.      The Exercise of Sound Discretion Does Not Support Allowing Forest to Continue as a Party.**

Forest's final argument is that everything else aside, this Court should, as a matter of discretion, allow Forest to remain a party to this litigation since this would "facilitate the conduct of the litigation."  There is simply no support for this argument.  There is nothing to suggest that PEAO is incapable of fully pursuing any claims it believes to be viable.  PEAO has certainly not suggested otherwise, or in any way indicated that it needs or desires Forest's continued involvement as a party.  Rather than facilitating the litigation, Forest's continued presence raises the substantial risk that an entity with no interest in the ongoing operations of the TBU will assert positions motivated solely by its desire to obtain money from a joint venture in which it possesses no operational or ongoing interest.  Forest's continued presence in this litigation can serve only to confuse, rather than to facilitate, matters.

### III.  CONCLUSION

For the reasons stated in the opening memorandum and in this reply, Forest should be dismissed as a party to this litigation.

DATED this 9th day of July, 2008.

> LANE POWELL LLC
> Attorneys for Defendant
>
> By   s/ Brewster H. Jamieson
>     Brewster H. Jamieson, ASBA No. 8411122
>     301 West Northern Lights Boulevard, Suite 301
>     Anchorage, Alaska  99503-2648
>     Tel:    907-277-9511
>     Fax:    907-276-2631
>     Email:  jamiesonb@lanepowell.com

I certify that on July 9, 2008, a copy of the foregoing was served by ECF on:

Jeffrey M. Feldman, feldman@frozenlaw.com
Michael Jungreis, mj@hartig.com

   s/ Brewster H. Jamieson
017351.0040/165105.1

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska  99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Reply in Support of Motion to Dismiss Plaintiff Forest Oil Corporation**
*Forest Oil Corporation v. Unocal Alaska* (Case No. 3:05-cv-00078-RRB)                        Page 12 of 12