IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| FOREST OIL CORPORATION,<br><br>        Plaintiff,<br><br>vs.<br><br>UNION OIL COMPANY OF CALIFORNIA, d/b/a UNOCAL ALASKA,<br><br>        Defendant. | Case No. A05-0078 CV (RRB)<br><br>**ORDER REGARDING<br>MOTION TO DISMISS** |

I.    **MOTION PRESENTED**

Before the Court is Defendant Union Oil Corporation of California ("Unocal") with a Motion to Dismiss Plaintiff Forest Oil Corporation ("Forest") from this case at Docket 120. Unocal argues that Forest should be dismissed from the case because it no longer has standing to prosecute claims arising from Unocal and Forest's prior contractual relationship for the development of the Trading Bay Unit ("TBU").[1] This contractual relationship between Unocal and Forest regarding the TBU serves as the entire basis for Forest's

---

[1]    Docket 120 at 4.

claims in this action. Unocal argues that Forest lacks standing because in 2006 Forest transferred its interest in the Trading Bay Unit to a wholly-owned subsidiary, Forest Alaska Operating, LLC("FAO"), which was later purchased by a third party and renamed Pacific Energy Alaska Operating, LLC ("PEAO").[2] PEAO has since been joined as a Plaintiff in this action.[3]

Forest opposes at Docket 126 and responds that while it has transferred its interest in the TBU, it has retained its interest in all causes of action against Unocal which arose prior to the transfer of its interest in the TBU.[4]

Inasmuch as the parties have submitted memoranda thoroughly discussing the law and evidence in support of their positions, the Court has determined that oral argument is neither necessary nor warranted.

## II. BACKGROUND

The contractual relationship between Unocal and Forest has been discussed previously by the Court in its Order Denying Motion for Partial Summary Judgment at Docket 90. The Trading Bay Unit consists of a number of offshore gas and oil leases in Alaska's Cook Inlet. Prior to the transfers which are the subject

---

[2]    Docket 120 at 1-4.

[3]    Docket 111.

[4]    Docket 126 at 2.

of this motion, Forest owned a 46.8% interest in the TBU, and Unocal owned a 53.2% interest in the TBU. Unocal managed the extraction of oil and gas from the TBU pursuant to the Trading Bay Unit Operating Agreement ("TBUOA"), signed by Forest and Unocal or their predecessors in interest in the late 1960's, and the Trading Bay Field Operating Agreement ("TBFOA"), signed by the parties or their predecessors in interest in 1996. These operating agreements give Unocal the authority to conduct drilling operations in the TBU, and to incur expenses on behalf of both parties. Under the operating agreements, Forest and its successors-in-interest are required to reimburse Unocal for their share of the operating expenses.[5]

Forest initiated this lawsuit alleging four causes of action arising out of Unocal's conduct as the field operator under the TBUOA and TBFOA.[6] Forest's first claim asserts a breach of contract seeking an unspecified amount of damages, alleging that Unocal, as the operator, acted imprudently by incurring unnecessary and excessive costs in operating the field. Forest's second claim seeks a declaratory judgment that Unocal's operations have been imprudent. The third claim, also brought as a breach of contract action, seeks to recover certain allegedly unauthorized expenses.

---

[5]   Docket 90 at 1-5; Docket 1 at Exhibits A and B.

[6]   Docket 90 at 4-5.

Forest's final claim seeks adjudication of exception claims noted in the routine audits made by Forest, or its predecessors-in-interest, under the terms of the TBUOA and/or TBFOA. The lawsuit was filed on April 14, 2005.[7]

On November 1, 2006, Forest assigned its interest in the TBU to Forest Alaska Holding LLC ("FAH"), which immediately transferred the same interests to FAO.[8] Both FAH and FAO were wholly owned subsidiaries of Forest at that time. To document the transfers, Forest, through its attorneys, prepared (1) a November 1, 2006, Master Conveyance between Forest and Forest Alaska Holding LLC, and (2) a November 1, 2006, Master Conveyance between Forest Alaska Holding LLC and Forest Alaska Operating LLC. These agreements effectuated the transfer and assignment of Forest's interest in the Trading Bay Unit to FAO.[9]

Both Master Conveyance agreements begin with the following language:

> For good and valuable consideration, the receipt and sufficiency of which [Forest] hereby acknowledges, [Forest] has GRANTED, ASSIGNED, TRANSFERRED and CONVEYED, and does hereby GRANT, ASSIGN, TRANSFER and CONVEY to Assignee the following properties and interests (collectively, the "assets"), on the

---

[7]   Docket 90 at 4-5.

[8]   Docket 120 at 2-3.

[9]   Docket 120 at 2, Exhibit E.

>  Effective Date, all of the right, title and interest owned by [Forest].[10]

The agreements also specifically assign:

> all of Assignor's right, title and interest in and to the service, purchase and sale, marketing, equipment, drilling, gathering, processing, transportation, operating and all other contracts, software licenses and other intellectual property licenses and agreements, and other instruments directly related to or used in connection with the Properties, including without limitation, those listed on Exhibit C attached hereto[].[11]

The list of assigned contracts includes all of the then-existing contracts between Unocal and Forest for the development of the TBU.[12]

Shortly after the assignment of the Forest's TBU interest to FAO, FAO was sold to Pacific Energy Resources, Ltd. ("PERL"), effective January 1, 2007.[13] On July 23, 2007, the Court granted Unocal's motion to join FAO as a Plaintiff in this action at Docket 107.  FAO adopted all of Forest's pleadings, and all of Unocal's counterclaims were applied against FAO as well.

FAO was renamed Pacific Energy Alaska Operating, LLC ("PEAO")in August 2007.  On January 8, 2008, at Docket 111, the

---

[10]   Docket 120 at 3, Exhibit E.

[11]   Docket 120 at Exhibit E.

[12]   <u>Id.</u>

[13]   Docket 128 at 2.

ORDER REGARDING MOTION TO DISMISS - 5
3:05-CV-0078-RRB

Court ordered that PEAO be substituted for FAO in all future pleadings.

On January 15, 2008, PEAO moved to amend the complaint and to cross-claim against Forest due to "a conflict between Forest Oil and PEAO as to which owns the claims asserted in this action by Forest Oil."[14] In the proposed amended complaint, PEAO alleged that as a result of the assignment of Forest's interest in the TBU, "all claims asserted in the complaint are now the property of [PEAO]."[15] PEAO further averred that "[a]ll of the relief demanded in the prayer for relief of the Complaint should be granted to [PEAO] to the exclusion of Forest Oil Corporation, which no longer has any interest or ownership of the claims and relief set forth in the complaint."[16]

PEAO, however, withdrew its motion to amend the complaint on January 18, 2008, just three days later, without explanation to the Court.[17] On January 28, 2008, all three parties filed a joint status report, in which they stated only that the addition of PEAO

---

[14]   Docket 113 at 1.

[15]   Docket 113 at 3.

[16]   Id.

[17]   Docket 114.

as a party had raised "questions about the parties' alignment on the remaining claims."[18]

On April 25, Unocal filed this motion to dismiss, alleging that the assignment of Forest's interests in the TBU had transferred all of Forest's causes of action in this case to PEAO.[19] Forest filed a response, alleging that "[w]hen Forest transferred its interests in the [TBU] to a subsidiary, [FAO], on November 1, 2006, it retained its causes of action against Unocal for audit claims concerning TBU production costs incurred prior to the date of transfer."[20] In support of this argument, Forest submitted two affidavits. This first was an affidavit from Richard Schelin, Deputy General Counsel for Forest. Mr. Schelin participated in the transfer of the TBU assets to FAO and the later sale of FAO to PERL. His affidavit states that the transfers "did not include claims, suits, audit exemptions, and other assets that relate to periods of time prior to the effective date of the transfer."[21]

---

[18]   Docket 115 at 2.

[19]   Docket 120 at 1-2.

[20]   Docket 126 at 1-2.

[21]   Docket 127 at 2.

The second affidavit was that of Darren Katic, president of PERL, who was also PERL's president when it purchased FAO. Mr. Katic stated:

> During the course of PERL's negotiations to purchase [FAO], Forest Oil Corporation disclosed that it did not intend to include the right to receive any moneys resulting from the audit adjustments under the Trading Bay agreements prior to 7:00 a.m. Alaska local time, being the effective date of the sale of [FAO] to PERL.[22]

Unocal submitted a reply to Forest's response on July 9, 2008, along with a request for oral arguments on the Motion to Dismiss.

## III. STANDARD OF REVIEW

Rule 25(c) of the Federal Rules of Civil Procedure provides:

> If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.

In order to rule on Unocal's Motion to Dismiss, this Court must first determine whether Forest actually transferred its original interest in the breach of contract claims to PEAO. If it is determined that the claims were in fact transferred, the Court

---

[22]  Docket 128 at 2.

must then decide whether to exercise its discretion under Rule 25 to dismiss Forest as a Plaintiff.

## IV. DISCUSSION

Before ruling on Unocal's Motion to Dismiss Forest for lack of standing, the Court must first determine whether Forest has been completely divested of its interest in the claims before the Court. Therefore, the Court must examine the Master Conveyance agreements which transferred Forest's interest in the TBU to FAO/PAEO and construe them in accordance with the applicable law.

### A. Forest Has Transferred its Claims Against Unocal

Because this is a diversity case, the Court must look to the law which the forum state would apply in construing the transfer agreements.[23] The Alaskan courts follow the Restatement (Second) of Conflict of Laws.[24] Under § 187 of the Second Restatement, where the contract in dispute contains a valid choice-of-law clause, the forum state will apply the designated law. The Master Conveyance in which Forest assigned its TBU interests to FAO specifically state that the document would be "governed by and construed in accordance with the laws of the State

---

[23] <u>Commercial Ins. Co. of Newark, N. J. v. Pacific-Peru Const. Corp.</u>, 558 F.2d 948 (9th Cir. 1977).

[24] <u>Long v. Holland America Line Westours, Inc.</u>, 26 P.3d 430, 432 (Alaska 2001).

ORDER REGARDING MOTION TO DISMISS - 9
3:05-CV-0078-RRB

of Colorado."[25]  Accordingly, the Court will apply Colorado law in construing the transfer agreements.

Colorado courts have adopted the parol evidence rule for the construction of contracts.  When interpreting a contract under Colorado law, a court "should only admit parol evidence when the contract between the parties is so ambiguous that their intent is unclear."[26]  Prohibited parol evidence includes "oral representations" which are "inconsistent with the terms of the final written agreement" and which "one would necessarily expect to be incorporated into the final agreement."[27]

Forest argues in its response to Unocal's motion that "[n]o particular formality is required under Colorado law to constitute a valid assignment, as long as the intent is apparent."[28] While that may be true, it is also true that, under Colorado law, where a written contract does exist, "the intent of the parties is determined from the plain language of the instrument itself, and extrinsic evidence is not admissible to reveal that intent."[29]

---

[25]    Docket 120 at Exhibit E.

[26]    <u>Boyer v. Karakehian</u>, 915 P.2d 1295, 1299 (Colo. 1996).

[27]    <u>Id.</u>

[28]    Docket 126 at 4.

[29]    <u>Fire Ins. Exchange v. Rael by Rael</u>, 895 P.2d 1139, 1142 (Colo. App.1995).

In the present case, the Master Conveyance documents purported to transfer to FAO "all of the right, title and interest owned by [Forest]" in the TBU properties.[30] The operations contracts between Forest and Unocal are specifically listed among the interests transferred in the Master Conveyance.[31] Within the Master Conveyance documents, there is no indication that Forest reserved any causes of action associated with those operating agreements.

This Court holds that a reservation by Forest of the pre-assignment causes of action is the type of contract provision which "one would necessarily expect to be incorporated into the final agreement."[32] The cumulative value of Forest's claimed damages in this case is in the millions of dollars. Where the Master Conveyance contains all-inclusive language to describe the property interest transferred (i.e., "all of the right, title and interest owned by [Forest]"), it is unreasonable to expect an asset worth potentially millions of dollars to be excluded from such an assignment, except by express reservation.

The Court further holds that the terms of the Master Conveyance are not "so ambiguous that [the parties'] intent is

---

[30]   Docket 120 at 3, Exhibit E.

[31]   Docket 120 at Exhibit E.

[32]   Boyer v. Karakehian, 915 P.2d 1295, 1299 (Colo. 1996).

unclear."[33] In <u>Knott v. McDonald's Corporation</u>, 147 F.3d 1065, (9th Cir. 1998), cited by Unocal in its Motion to Dismiss, the Ninth Circuit held that where the plaintiffs had "expressly assigned 'all [their] right, title and interest" in a franchise agreement, such an assignment unambiguously included all breach of contract claims associated with the assigned contract.[34]  The Court held that "the assignment, while admittedly broad, is not ambiguous" because "'all' is an all-encompassing term."[35]  As the <u>Knott</u> Court summarized, "In short, 'all' means all."[36]

While the <u>Knott</u> decision was based upon Illinois contract law, the Ninth Circuit's plain language interpretation of the franchise agreement is sound and applicable to the present case. There is simply no ambiguity in the Master Conveyance's language assigning "all of the right, title and interest owned by [Forest]" to FAO/PEAO.  As the Ninth Circuit noted, "'all' means all."[37]

Because the Master Conveyance is unambiguous, the Court will not consider any extrinsic evidence of the parties' intent which "inconsistent with the terms of the final written

---

[33]   <u>Boyer</u> at 1299.

[34]   <u>Knott</u> at 1067-68.

[35]   <u>Knott</u> at 1067.

[36]   <u>Id.</u>

[37]   <u>Id.</u>

agreement."[38]  The affidavits of Mr. Schelin and Mr. Katic contradict the plain language of the Master Conveyance to FAO, and the Court may not consider them in determining whether Forest transferred its interest in the claims before this Court.

Because the Court must rely solely on the "plain language of the instrument itself"[39], the Court concludes that the Master Conveyance to FAO/PEAO constitutes an assignment of Forest's claims against Unocal.

### B. The Court Will Not Dismiss Forest as Plaintiff at this Time

Having concluded that Forest has assigned its claims to PEAO, the Court must now decide whether to exercise its discretion under Rule 25(c) of the Rules of Civil Procedure to dismiss Forest as a Plaintiff.  Forest correctly notes that dismissal under Rule 25(c) is "purely a discretionary determination by the court."[40]  As Wright, Miller and Kane point out:

> The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on the successor in interest even though the successor is not named. An order of joinder is merely a discretionary

---

[38]   Boyer v. Karakehian, 915 P.2d 1295, 1299 (Colo. 1996).

[39]   Fire Ins. Exchange v. Rael by Rael, 895 P.2d 1139, 1142 (Colo. App. 1995).

[40]   Docket 126 at 7.

>    determination by the trial court that the
>    transferee's presence would facilitate the
>    conduct of the litigation. . .
>
>    . . . If the transferor and the transferee are
>    both already parties to the action, the court,
>    again in its discretion, may dismiss the
>    transferor from the suit. Since the matter is
>    discretionary, the court also may refuse
>    substitution if this seems the wisest course.[41]

The Court finds that immediate dismissal of Forest as Plaintiff would not be the "wisest course" of action at this time. Although the Master Conveyance divested Forest of its claims against Unocal, there are a number of ways in which Forest can cure the defect in its standing to sue.

Forest asserts in its response to Unocal that "[e]ven if somehow Forest had inadvertently transferred the audit claims to what is now PEAO, contrary to the express intent of the parties, the claims could simply be transferred by the parties back to Forest. Or the relevant contracts could be reformed to correct this mistake."[42] In other words, Forest claims that to the extent the contract transferred its interest in this action to PEAO, that transfer represents a mistake in integration, or a mistake in formation, of the contract.

---

[41]   7C Charles A. Wright, Arthur R. Miller & Mary K. Kane, FEDERAL PRACTICE AND PROCEDURE § 1958, 691-703 (3d ed. 2007) (citations omitted).

[42]   Docket 126 at 5, n. 13.

Obviously, if PEAO is willing to transfer its interest in the pre-transfer claims back to Forest, then Forest's standing to sue would be restored.  Mr. Katic's affidavit can perhaps be taken as an signal that PEAO and Forest have already agreed that there was a mistake in the written contract and that the claims rightfully belong to Forest. PEAO's quick withdrawal of its motion to amend the pleadings could be indicative of the same.  However, no such agreement was mentioned in the most recent joint status report.

Even if PEAO is unwilling to reconvey the claims to Forest, Forest may still have a stake in this action if it asserts that there was a mistake in the formation of the conveyance agreements between Forest and PEAO.  Colorado law recognizes that extrinsic evidence may be used to prove "allegations of fraud, accident, or mistake in the formation of the contract."[43]  The affidavits of Mr. Katic and Mr. Schelin indicate that Forest may have a colorable claim for "accident" or "mistake in the formation" of the assignment of the TBU and the operating contract.

It would be inappropriate at this time for the Court to simply "reform[]" the "relevant contracts" per Forest's request.[44] There is far too little evidence at the Court's disposal to

---

[43]   Boyer v. Karakehian, 915 P.2d 1295, 1299 (Colo. 1996).

[44]   Docket 126 at 5, n. 13.

conclude with any certainty that such a mistake in formation did in fact occur.  Moreover, PEAO is not a party to this motion and has not addressed the legitimacy of the assignment in any pleading currently before the Court, having chosen to withdraw its motion to amend the complaint.

Absent a voluntary reassignment of the claims by PEAO, if Forest wishes for the Court to address the issue of a mistake in the integration or formation of the TBU assignment, then it must move to amend the pleadings consistent with an adverse relationship between PEAO and Forest.  Otherwise, Unocal's Motion to Dismiss will be granted.  The Court will not permit Forest to maintain an action in which it has no interest.

**V.   CONCLUSION**

For the foregoing reasons, the Court will stay its ruling on Unocal's Motion to Dismiss until **September 19, 2008,** to allow Forest a reasonable time to cure the defect in its standing in this action.

**IT IS SO ORDERED.**

ENTERED this 28th day of August, 2008.

                              S/RALPH R. BEISTLINE
                              UNITED STATES DISTRICT JUDGE